Saundra Harris MITCHELL and Jan P. Mitchell, Individually and as Next Friends of Ashley J. Harris, Appellants,

v.

CITY OF DALLAS, Appellee.

No. 05–91–01416–CV.

Court of Appeals of Texas, Dallas.

March 31, 1993.

Kristina Bline Dial, Harrison & Dial, Burleson, for appellants.

Patricia Medrano, Asst. City Atty., Dallas, for appellee.

Before LAGARDE, KINKEADE and BARBER [1], JJ.

## OPINION

BARBER, Justice.

This is a premises liability case. Saundra Harris Mitchell and Jan P. Mitchell sued the City of Dallas for damages sustained by their minor son when he fell from his bicycle at a municipal park. The City moved for summary judgment. The trial court rendered judgment in favor of the City. We reverse and remand.

### FACTUAL BACKGROUND

Ashley Harris suffered serious injuries when he fell from his bicycle into a creek bed at Hamilton Park. The park is owned

---

1. Justice Will Barber succeeds Justice Jeff Kaplan, a member of the original panel. Justice Barber has reviewed the briefs and record in this case.

and maintained by the City of Dallas. The accident occurred at a part of the creek where there is a fifteen to twenty-five foot drop-off. This condition was created by a gabion wall constructed by the City for erosion control. The wall consists of rocks wired together. Ashley fell over the edge of the drop-off onto the rocks below.

The Mitchells allege that the City was negligent and grossly negligent in the construction and maintenance of the gabion wall. They also allege that the City failed to warn park users of the steep drop-off and failed to construct a fence or other barrier around this dangerous area.

### ISSUES ON APPEAL

The Mitchells attack the trial court's summary judgment on two broad grounds. First, they contend that this case is governed by common-law principles because the establishment and maintenance of public parks are proprietary functions. Alternatively, the Mitchells argue that their claims against the City are within the waiver provisions of governmental immunity under the Texas Tort Claims Act. They assert that fact issues exist concerning gross negligence in the construction and maintenance of the gabion wall and the City's negligent failure to warn of or correct this dangerous condition.

### LIABILITY UNDER COMMON LAW

■ In their fourth point of error, the Mitchells contend that the Texas Tort Claims Act does not apply to this case. Rather, the Mitchells argue that the City is liable under common-law principles because the establishment and maintenance of public parks are proprietary functions.

■ Under common law, the establishment and maintenance of public parks were deemed proprietary functions. *See Dancer v. City of Houston*, 384 S.W.2d 340, 342 (Tex.1964); *City of Waco v. Branch*, 117 Tex. 394, 5 S.W.2d 498, 499 (1928). These common-law classifications have been redefined under the Texas Tort Claims Act. Section 101.0215 of the Act now provides that the operation of parks and zoos is a governmental function. *See* TEX.CIV.PRAC.

& REM.CODE ANN. § 101.0215(a)(13) (Vernon Supp.1993).

The Mitchells argue that section 101.-0215(a) does not reclassify *all* actions taken by a city regarding public parks. We refuse to adopt such a restrictive interpretation of the statute. To the contrary, the legislature specifically provided that the proprietary functions of a municipality do *not* include those governmental activities listed in section 101.0215(a). *See* TEX.CIV. PRAC. & REM.CODE ANN. § 101.0215(c) (Vernon Supp.1993).

We conclude that the claims against the City made the basis of this suit involve governmental functions. The Mitchells do not have any common-law cause of action against the City. We overrule the fourth point of error.

### LIABILITY UNDER THE TEXAS TORT CLAIMS ACT

The Mitchells next contend that the trial court erred in granting summary judgment because they stated a cause of action within the waiver provisions of governmental immunity under the Texas Tort Claims Act. They allege that the City is not immune from liability for negligent construction and maintenance of the gabion wall along the creek bank. *See, e.g., City of Watauga v. Taylor*, 752 S.W.2d 199, 202 (Tex.App.— Fort Worth 1988, no writ); *Stanford v. State Dep't of Highways & Pub. Transp.*, 635 S.W.2d 581, 582 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

The City argues that these allegations involve the design, upgrading, and placement of an erosion control device. The City contends that it is immune from liability because these activities involve discretionary functions. *See, e.g., City of El Paso v. Ayoub*, 787 S.W.2d 553, 554 (Tex. App.—El Paso 1990, writ denied); *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied).

#### 1. Governmental Immunity

A municipality performing a governmental function is afforded sovereign immunity

unless immunity has been waived under the Texas Tort Claims Act. *See* Tex.Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 1986 & Supp.1993). A governmental unit is liable for personal injuries proximately caused "by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986).

### 2. Discretionary Functions

The Texas Tort Claims Act creates certain exceptions to the waiver of governmental immunity. Section 101.056 provides that the waiver provisions of the Act do not apply to claims based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1986); *see generally* Lee M. Larkin, Comment, *The "Policy Decision" Exemption of the Texas Tort Claims Act: State v. Terrell*, 32 Baylor L.Rev. 403 (1980) [hereinafter Larkin].[2]

▮▮▮ The discretionary function exception to the waiver of sovereign immunity is designed to avoid judicial review of governmental policy decisions. *State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979); *McKinney v. City of Gainesville*, 814 S.W.2d 862, 866 (Tex.App.—Fort Worth 1991, no writ). Thus, a governmental entity is immune from liability if an injury results from the formulation of policy. However, a governmental unit is not immune if an injury is caused by the negligent implementation of that policy. *See Terrell*, 588 S.W.2d at

787–88; *Christilles v. Southwest Tex. State Univ.*, 639 S.W.2d 38, 42 (Tex.App.—Austin 1982, writ ref'd n.r.e.); Larkin at 409. This distinction is often stated in terms of actions taken at the planning or policy-making level, which are immune, and actions taken at the subordinate or operational level, which are not immune. *See McKinney*, 814 S.W.2d at 866; *Crossland*, 781 S.W.2d at 433; Larkin at 410.

▮▮▮ Design decisions made by the City are discretionary and therefore immune from liability. *See Crossland*, 781 S.W.2d at 433; *Taylor*, 752 S.W.2d at 202; *Stanford*, 635 S.W.2d at 582. Maintenance activities undertaken at the operational level are not discretionary functions and are not immune from liability. *See City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985); *Taylor*, 752 S.W.2d at 202; *Hamric v. Kansas City S. Ry.*, 718 S.W.2d 916, 919 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.). There is some conflict in the case law regarding the characterization of construction activities. *Compare Smith*, 687 S.W.2d at 303, *and Ayoub*, 787 S.W.2d at 554 (indicating that city is not immune from liability for construction and maintenance activities), *with Taylor*, 752 S.W.2d at 202 (indicating that planning and construction are immune activities).

We hold that construction activities are not discretionary functions. These activities involve the implementation of planning or policy-making decisions at the operational level. Therefore, the City is not immune from liability for claims based on the negligent construction and maintenance of the gabion wall.

### STANDARD OF CARE

▮▮▮ We next determine the standard of care owed by the City to park users. The City argues that it only owes the duty owed to a trespasser. The Mitchells contend that the City owes the same duty as

---

2. The Larkin comment and several cases cited in this opinion involve the interpretation of the original Tort Claims Act contained in the Revised Civil Statutes. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon 1970) (repealed 1985). The codification of the prior statute in the Civil

Practice and Remedies Code did not effect any substantive change, and the language of the current version of the Texas Tort Claims Act is virtually identical to the prior statute. *See* Tex. Civ.Prac. & Rem.Code Ann. § 1.001 (Vernon Supp. 1993).

owed to an invitee because they paid for use of the premises through the payment of taxes and because of the nature of the premises defect.

### 1. Statutes

Section 101.022 of the Texas Tort Claims Act provides:

> (a) If a claim arises from a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a *licensee* on private property, unless the claimant pays for the use of the premises.
>
> (b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.022 (Vernon 1986) (emphasis added).

Section 75.002 of the Civil Practice and Remedies Code provides:

> If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises. for recreation, the owner, lessee, or occupant, by giving the permission, does not:
>
> ....
>
> (2) owe to the person to whom permission is granted a greater degree of care than is owed to a *trespasser* on the premises.

TEX.CIV.PRAC. & REM.CODE ANN. § 75.002 (Vernon 1986) (emphasis added).

These two statutes are in apparent conflict in cases where the owner or occupier of the premises is a governmental unit that gives implied permission to persons to enter the property for recreational purposes. We must resolve this conflict by examining the case law and implementing well-settled rules of statutory construction.

### 2. Case Law

One court has held that the statutory predecessor to section 75.002, article 1b of the Revised Civil Statutes, should apply only if the injured party was a trespasser. It held the statute did not apply in a gov-

ernmental tort liability context by simply stating that the persons who used the premises were not trespassers. *Trinity River Auth. v. Williams*, 659 S.W.2d 714, 720 (Tex.App.—Beaumont 1983), *aff'd in part and rev'd in part on other grounds*, 689 S.W.2d 883 (Tex.1985); *see* TEX.REV.CIV. STAT.ANN. art. 1b, § 1 (Vernon 1969). It should be noted that the statute did not declare that recreational users are trespassers but merely provided that the duty owed to such users is the same as that owed to trespassers. Another court has held that section 75.002 did apply to governmental units. Noting that section 101.-022(a) provides that the governmental entity owes "only the duty that a private person owes to a licensee on private property," the court held that the section 75.002 duty standard applied to the State. *Crossland*, 781 S.W.2d at 433. Although the *Crossland* court purported to rely on section 101.022(a) in reaching its result, it ignored the fact that such provision states the governmental unit owes the duty that a private person owes *to a licensee*.

### 3. Statutory Analysis

We are not persuaded by the reasoning of either *Williams* or *Crossland*. Instead, we look to the legislative history of sections 75.002 and 101.022(a).

Article 1b of the Texas Revised Civil Statutes preceded section 75.002. *See* Act of May 29, 1965, 59th Leg., R.S., ch. 677, 1965 Tex.Gen.Laws 1551, 1551–52. Until this statute was codified in the Texas Civil Practice and Remedies Code, it was contained in the "General Provisions" of Title 1. *See* TEX.REV.CIV.STAT.ANN. art. 1b, § 1 (Vernon 1969). The statutory predecessor to section 101.022(a) of the Texas Tort Claims Act was article 6252–19, section 18(b) of the Texas Revised Civil Statutes. Article 6252–19 was first enacted in 1969, four years after the enactment of article 1b. *See* Texas Tort Claims Act, 61st Leg., R.S., ch. 292, 1969 Tex.Gen.Laws 874, 878–79; TEX.REV.CIV.STAT.ANN. art. 6252–19, § 18(b) (Vernon 1970).

We conclude that section 75.002 and its predecessor, article 1b, were intend-

ed to be laws of general application. Section 101.022(a) and its predecessor, section 18(b) of article 6252–19, were specific laws applicable to governmental owners and occupiers of real property. When two statutes conflict, the specific controls over the general. *Sam Bassett Lumber Co. v. City of Houston*, 145 Tex. 492, 496, 198 S.W.2d 879, 881 (1947); *see also* TEX.GOV'T CODE ANN. § 311.026(b) (Vernon 1988); *Carr v. Hunt*, 651 S.W.2d 875, 882 (Tex.App.—Dallas 1983, writ ref'd n.r.e). Further, a more recent statutory enactment prevails over an earlier one. TEX.GOV'T CODE ANN. § 311.025(a) (Vernon 1988); *State v. McKinney*, 803 S.W.2d 374, 376 (Tex. App.—Houston [14th Dist.] 1990, no pet.); *Commercial Standard Fire & Marine Co. v. Commissioner of Ins.*, 429 S.W.2d 930, 933 (Tex.Civ.App.—Austin 1968, no writ).

### 4. Conclusion

We hold that section 101.022(a) controls over section 75.002. The duty owed by the City to park users under the Texas Tort Claims Act is the duty that a private person owes to a licensee. An owner or occupier of land must refrain from injuring a licensee by willful, wanton, or gross negligence. An owner or occupant must also warn a licensee of any dangerous condition, or make the condition reasonably safe, if the land owner has actual knowledge of the dangerous condition and the licensee does not. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974).

### EXCEPTIONS TO THE STANDARD OF CARE UNDER THE TORT CLAIMS ACT

The Mitchells argue that the duty owed by the City in this case is the same duty owed to an invitee. The Mitchells contend that the Texas Tort Claims Act creates a higher standard of care because: (1) they paid for use of the park through the payment of taxes; and (2) the steep drop-off created by the gabion wall constituted a special defect.

### 1. Taxpayer Status

The Mitchells first contend that their son was an invitee because they paid for use of the park through the payment of city taxes.

A similar argument was recently rejected by the San Antonio Court of Appeals in *Garcia v. State*, 817 S.W.2d 741 (Tex. App.—San Antonio 1991, writ denied). The plaintiff in *Garcia* sued the State of Texas under the Texas Tort Claims Act for damages sustained in a highway accident. He claimed invitee status because he paid for use of the highway through driver's license fees and fuel taxes. The court held that the payment of fees and taxes does not confer invitee status for several reasons: (1) invitee status requires payment of a specific fee for entry onto and use of public premises; (2) the plaintiff's contention would result in a lesser duty owed to nonresident users who did not pay taxes; and (3) the legislature did not intend such a broad grant of invitee status under section 101.022(a) of the Tort Claims Act. *See Garcia*, 817 S.W.2d at 743.

We adopt the reasoning of *Garcia*. We hold that section 101.022(a) of the Tort Claims Act does not confer invitee status on park users based on the payment of taxes alone.

### 2. Special Defect

The Mitchells next contend that the City owed a higher standard of care because the steep drop-off created by the gabion wall constituted a special defect.

A governmental unit has a duty to warn of or protect against special defects. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b) (Vernon 1986); *see City of Houston v. Jean*, 517 S.W.2d 596, 599 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). The duty to warn of a special defect is the same duty owed to an invitee. *County of Harris v. Eaton*, 573 S.W.2d 177, 180 (Tex.1978). A special defect must be distinguished by some unusual quality outside the ordinary course of events. *Crossland*, 781 S.W.2d at 433; *Sutton v. State Highway Dep't*, 549 S.W.2d 59, 61 (Tex.Civ.App.—Waco 1977, writ ref'd

**748**

n.r.e.). A condition is a special defect only if it presents an unexpected and unusual danger to ordinary users of a roadway. *State Dep't of Highways & Pub. Transp. v. Kitchen*, 1993 WL 82675, 36 Tex.Sup. Ct.J. 678, 679 (March 24, 1993); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238–39 n. 3 (Tex. 1992) (op. on mot. for reh'g). A longstanding, routine, or permanent condition is not a special defect. *Crossland*, 781 S.W.2d at 433.

The Mitchells do not argue that the condition created by the gabion wall was unusual or outside the ordinary course of events. The summary judgment evidence establishes that the drop-off near the creek bank was longstanding and permanent. We hold that the premises defect made the basis of this claim was not a special defect.

## MOTION FOR SUMMARY JUDGMENT

We now consider the summary judgment rendered in favor of the City in light of our holding that (1) construction and maintenance activities are not discretionary functions, and (2) the duty owed to park users is the same duty owed to a licensee.

### 1. Standard of Review

Summary judgment may be rendered only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex.1989). A summary judgment seeks to eliminate patently unmeritorious claims and defenses, not to deny a party its right to a full hearing on the merits of any real fact issue. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

A defendant who moves for summary judgment must show that the plaintiff has no cause of action. *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). A defendant may meet this burden by either (1) disproving at least one essential element of each theory of recovery, *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991), or (2) conclusively proving all elements of an affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

In reviewing a summary judgment, we must take all evidence favorable to the nonmovant as true in deciding whether a fact issue exists. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We must indulge every reasonable inference and resolve any doubt in favor of the nonmovant. *Id.*

### 2. Application of Law to the Facts

#### a. Negligent Construction and Maintenance

The Mitchells allege that the City was negligent and grossly negligent in the construction and maintenance of the gabion wall. They specifically pleaded that the City was negligent in constructing the wall for erosion control "in such a manner so as to result in a dangerous condition by creating a 15 to 25 foot steep cliff drop-off ... when the City should have built the creek bank in a non-cliff manner." The Mitchells also alleged that "[c]onstruction and maintenance of a 15 to 25 foot drop-off behind a public restroom in a public park without a fence and warning signs demonstrates a lack of due care and conscious indifference to the health, safety, and welfare of those affected by it."[3]

The City characterizes these allegations as defective design claims. It correctly notes that design claims are discretionary functions for which governmental entities are immune from liability. However, the City has failed to conclusively demonstrate that design defect is the sole basis for the Mitchells' claim.

---

3. Gross negligence is defined as "such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected." Tex.Civ.Prac. & Rem.Code Ann. § 41.001(5) (Vernon Supp.1993). Absent a special exception, the allegation of "lack of due care and conscious indifference" contained in the Mitchell's petition is sufficient to plead the duty owed by the City to park users.

■ The City argues it is entitled to judgment as a matter of law because there is no specific pleading or proof that the premises were unreasonably dangerous or that it breached any duty owed to park users. The City misconstrues the burden of proof in a summary judgment proceeding. It is incumbent upon a defendant as movant to conclusively negate at least one essential element of the plaintiff's case. *Citizens First Nat'l Bank*, 540 S.W.2d at 294. A plaintiff as nonmovant is not required to establish his right to prevail. *Ramirez v. Bagley Produce Co.*, 614 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1981, no writ). A nonmovant has no duty or burden whatsoever in a summary judgment case until the movant establishes its right to a judgment as a matter of law. *Bankers Commercial Life Ins. Co. v. Scott*, 631 S.W.2d 228, 232 (Tex.App.—Tyler 1982, writ ref'd n.r.e.).

The City presented no evidence of the original design of the gabion wall. The City did not show that the gabion wall was constructed and maintained pursuant to its original design and that the design of the wall was not otherwise modified. The City, therefore, failed to show that the Mitchells' allegations were defective design claims and, thereby, failed to meet its burden of negating an essential element of the Mitchells' case.

The Mitchells alleged that Ashley was injured when he fell from his bicycle down a steep cliff drop-off. The area was unfenced and located adjacent to the sidewalk. The Mitchells contend that this constitutes a dangerous condition. Ashley's deposition testimony reflects that there was erosion of the ground underneath the sidewalk where he fell.[4] The City did not conclusively negate these allegations. The pleadings and deposition testimony are sufficient to create a fact issue regarding negligent and grossly negligent maintenance and construction.

### b. Failure to Warn or Make Safe

■ The Mitchells alleged that the City failed to warn of a dangerous condition in the area of the restrooms and sidewalk adjacent to the creek. They also claimed that the City failed to construct a fence or other barrier in the area or otherwise correct the dangerous condition.

■ The City relies on affidavits from three park officials to show that it lacked actual knowledge of any dangerous condition. The affidavits state that the City had no prior notice of a defect, dangerous condition, or similar accident. However, lack of notice from third parties does not conclusively negate actual knowledge. The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. The question of knowledge is a fact issue. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992). An affidavit from a civil engineer states the drop-off should have been fenced off from the public area of the park. The engineer's affidavit concludes that in failing to fence off or otherwise obstruct public movement into the area, "the City has failed to protect the public or give adequate warning to the public of a defect which created a dangerous condition."

The City argues that Ashley must be charged with knowledge of any dangerous condition because the alleged premises defect was open and obvious. The duty to warn or make safe applies when the licensee lacks actual knowledge. *State v. Payne*, 838 S.W.2d at 237; *Tennison*, 509 S.W.2d at 562. The City contends that the Mitchells have conceded that Ashley had actual knowledge of the condition of the premises. The response to the summary judgment motion recites that Ashley was aware of the existence of the creek. The response recites that Ashley, "being *unaware* ... that the ground had eroded under the sidewalk next to this drop-off ... fell over the edge and onto the rocks be-

---

**4.** Ashley's testimony on this point is not very clear, but it is susceptible to the interpretation advanced by the Mitchells. In a summary judg-ment case, all inferences and doubts must be resolved in favor of the nonmovant. *See Nixon*, 690 S.W.2d at 548–49.

low." The Mitchells never stated that Ashley was aware of the drop-off next to the sidewalk. The record does not conclusively establish that Ashley had actual knowledge of a dangerous condition. The lack of knowledge is an element of appellant's claim that when disputed should be submitted to the fact finder. *See Payne*, 838 S.W.2d at 241.

## SUMMARY

The establishment and maintenance of municipal parks are governmental functions under the Texas Tort Claims Act. The City is immune from liability for any claims involving the design of the gabion wall at Hamilton Park. However, the City is not immune from liability for claims based on the construction or maintenance of the wall. The duty owed by the City to park users is the same duty owed by a private person to a licensee.

We hold that the trial court erred in granting summary judgment. There are genuine fact issues concerning (1) gross negligence [5] in the construction and maintenance of the gabion wall, and (2) the failure to warn of or correct a dangerous condition.[6] We sustain the Mitchell's second and third points of error.

We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

---

[5]. The duty owed to licensees being a duty to refrain from injuring by willful, wanton, or gross negligence.

---

[6]. The licensor must also warn of a dangerous condition, or make it reasonably safe, if the licensor has actual knowledge of the condition and the licensee does not have such knowledge.