ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 26, 2006

The Honorable Kip Averitt
Chair, Committee on Natural Resources
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0441

Re: Authority of a municipality to lease its oil, gas and mineral property and the terms under which it may do so   (RQ-0432-GA)

Dear Senator Averitt:

Your predecessor as Chair of the Senate Committee on Natural Resources asked us to consider the authority of a municipality to lease its oil, gas, and mineral properties, and the terms under which it may do so.[1] At issue are two statutes, subchapter A of chapter 71 of the Natural Resources Code, and section 253.005 of the Local Government Code. *See* Request Letter, *supra* note 1, at 1–2. Your predecessor asked whether these two statutes are in conflict and, if so, which prevails. *See id.* at 1. The concern expressed in the request letter arises from the interrelationship between these two statutes and a 1952 attorney general opinion. *See id.* at 1–2; *see also* Tex. Att'y Gen. Op. No. V-1569 (1952). In addition, there is one case that resulted in two court decisions that reach potentially different conclusions about that interrelationship. *See City of Corpus Christi v. Gregg,* 275 S.W.2d 547, 553–54 (Tex. Civ. App.—San Antonio 1954), *rev'd on other grounds,* 289 S.W.2d 746 (Tex. 1956).

## I.     Historical background

In 1952, this office issued Attorney General Opinion V-1569, which discussed the conflict between the predecessors of the two statutes at issue here. *See* Tex. Att'y Gen. Op. No. V-1569 (1952). The prior version of subchapter A of chapter 71 of the Natural Resources Code was former article 5400a of the Texas Revised Civil Statutes, which had first been enacted in 1937. *See* Act of Apr. 30, 1937, 45th Leg., R.S., ch. 279, §§ 1–3, 1937 Tex. Gen. Laws 568, 568-69.[2] That statute was applicable to political subdivisions and authorized those entities to "lease for mineral development

---

[1]*See* Letter from Honorable Ken Armbrister, Chair, Committee on Natural Resources, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Jan. 19, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*Repealed and recodified by* Act of May 24, 1977, 65th Leg., R.S., ch 871, §§ 71.001–.010, 1977 Tex. Gen. Laws 2345, 2504–05 (current version at TEX. NAT. RES. CODE ANN. §§ 71.001–.010 (Vernon 2001) (subchapter A, chapter 71).

purposes any and all lands" which they may own. *Id.* § 1, at 568. The right to lease those lands, however, was contingent upon restrictions imposed upon the governing body of the political subdivision, such as notice, hearing, and competitive bidding. *See id.* § 2, at 568. By contrast, former article 1267 of the Texas Revised Civil Statutes, which was a prior version of section 253.005 of the Local Government Code, first enacted in 1919, was limited in its application to cities and towns. *See* Act of March 18, 1919, 36th Leg., R.S., ch. 117, § 1, 1919 Tex. Gen. Laws 183, 183.[3] Such entities were granted "the power and right to lease such oil or mineral lands for the benefit of such town or city," subject to certain minor restrictions but not to any of the restrictions imposed on political subdivisions by article 5400a. *See id.*

Attorney General Opinion V-1569 found that because "cities and towns are political subdivisions of the State, Articles 1267 and 5400a" relate to the same subject matter as to cities and towns and that article 1267, applicable only to cities and towns, was an exception to article 5400a. Tex. Att'y Gen. Op. No. V-1569 (1952) at 4–6. The opinion reasoned that because article 1267 was the more specific statute, it prevailed over article 5400a with regard to cities and towns. *See id.* at 6. As a consequence, cities and towns were not bound by the restrictions imposed on political subdivisions by article 5400a.

In 1954, the San Antonio Court of Civil Appeals, without referring to Attorney General Opinion No. V-1569, held that there was no conflict between article 1267 and article 5400a, that the statutes could be harmonized, and that as a result, cities and towns were subject to the restrictions imposed by article 5400a. *See Gregg*, 275 S.W.2d at 553–54. Two years later, the Supreme Court of Texas reversed the decision of the court of appeals, but on the procedural ground that the City of Corpus Christi was estopped to deny the validity of the leases granted. *See Gregg*, 289 S.W.2d at 753. The supreme court neither upheld nor overruled the San Antonio court's decision that articles 1267 and 5400a were not in conflict and could be harmonized. Rather, it merely granted, "for the sake of argument, that article 5400a applies to cities and towns." *Id.* at 751 (citation omitted).

Here the issue of the conflict between the two statutes rested until 1975. The state of the law would have been difficult to determine during those nearly two decades because of the uncertainty regarding the authority of both the San Antonio court's decision in *Gregg*, which had been reversed on other grounds, and Attorney General Opinion V-1569, which had not been cited in the San Antonio court's decision in *Gregg*. Then in 1975 the legislature amended former article 1267 to add the following italicized language:

> Cities and towns chartered and organized under the general
> laws of Texas, or by special Act or charter, which may own oil, gas
> or mineral lands, shall have the power and right to lease such oil, gas

---

[3]*Amended by* Act of May 17, 1975, 64th Leg., R.S., ch. 312, § 1, 1975 Tex. Gen. Laws 806, 806, *and* Act of May 26, 1985, 69th Leg., R.S., ch. 893, § 1, 1985 Tex. Gen. Laws 3017, 3017–18; *repealed and recodified by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49, 1987 Tex. Gen. Laws 707, 1028, 1307 (current version at TEX. LOC. GOV'T CODE ANN. § 253.005 (Vernon 2005)).

> or mineral lands for the benefit of such town or city *in such manner and upon such terms and conditions as the governing body of such town or city may determine* . . . .

*See* Act of May 17, 1975, 64th Leg., R.S., ch. 312, § 1, 1975 Tex. Gen. Laws 806, 806 (emphasis added).[4]

## II.     Relevant statutes

Chapter 71 of the Natural Resources Code provides that "[a] political subdivision may lease land owned by it for mineral development, including development of coal and lignite," TEX. NAT. RES. CODE ANN. § 71.002 (Vernon 2001), and it sets out specific requirements for such a lease. *See id.* §§ 71.001–71.057. Subchapter A of chapter 71 describes the leasing procedures, which include notice and hearing requirements, that a political subdivision must follow in order to lease its land for mineral development. *Id.* §§ 71.001–.010.[5] Other portions of the subchapter relate to bidding procedures. *Id.* §§ 71.006–.008. Section 71.009 prescribes that the lessor shall retain a royalty interest, based on whether the lease is for "coal and lignite" or for other kinds of mineral. *Id.* § 71.009. Finally, section 71.010 prescribes maximum terms for a lease: thirty-five years in the case of coal and lignite, ten years for other kinds of mineral. *See id.* § 71.010.

Section 253.005 of the Local Government Code, on the other hand, provides very few restrictions on such mineral leases:

> (a)   Except as provided by Subsection (b), a municipality may lease oil, gas, or mineral land that it owns, *in the manner and on the terms that the governing body of the municipality determines,* for the benefit of the municipality. A lease under this section is not a sale under the law governing the sale of municipal land.

> (b)   A municipality may not lease under this section a street, alley, or public square in the municipality.

> (c)   A well may not be drilled in the thickly settled part of the municipality or within 200 feet of a private residence.

TEX. LOC. GOV'T CODE ANN. § 253.005 (Vernon 2005) (emphasis added).

---

[4]*Amended by* Act of May 26, 1985, 69th Leg., R.S., ch. 893, § 1, 1985 Tex. Gen. Laws 3017, 3017–18; *repealed and recodified by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49, 1987 Tex. Gen. Laws 707, 1028, 1307 (current version at TEX. LOC. GOV'T CODE ANN. § 253.005 (Vernon 2005).

[5]Chapter 71 defines a political subdivision as "any body corporate with a recognized and defined area." TEX. NAT. RES. CODE ANN. § 71.001 (Vernon 2001).

The issue before us is whether there is a conflict between subchapter A of the Natural Resources Code, which attaches various restrictions to a political subdivision's lease of its mineral land, and section 253.005 of the Local Government Code, which imposes relatively few and minor restrictions on a municipality's lease of its land for purposes of mineral development and *none* of the notice, hearing and bidding requirements required under subchapter A of chapter 71 of the Natural Resources Code.

## III.    Analysis

Subchapter A of chapter 71 of the Natural Resources Code applies to all political subdivisions, of which a municipality is merely one example. *See* TEX. NAT. RES. CODE ANN. §§ 71.001–.010 (Vernon 2001) (subchapter A, chapter 71). Section 253.005 of the Local Government Code, on the other hand, applies *only* to a municipality. *See* TEX. LOC. GOV'T CODE ANN. § 253.005 (Vernon 2005). Although the relevant provisions of chapter 71 of the Natural Resources Code are more detailed, section 253.005 is the narrower and thus more specific provision. Section 311.026(a) of the Government Code provides that, "[i]f a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 2005). In our view, however, the statutes cannot be harmonized because section 253.005 applies very limited restrictions to a narrow subset of the category of "political subdivision," while subchapter A of chapter 71 imposes different and much more stringent restrictions to the entire category of "political subdivision." Furthermore, as we have noted, section 253.005 contains the provision that "a municipality may lease oil, gas, or mineral land that it owns, *in the manner and on the terms that the governing body of the municipality determines*." TEX. LOC. GOV'T CODE ANN. § 253.005 (Vernon 2005). This last clause indicates that a municipality is at liberty to negotiate and set its own lease terms without regard to the notice, hearing, length of term, and bidding restrictions attached to subchapter A of chapter 71 of the Natural Resources Code.

Section 311.026(b) of the Government Code declares that "[i]f the conflict between the general provision and the special or local provision is irreconcilable, the special or local prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005). Texas courts, including the Supreme Court, have construed the term "special or local" to mean "specific." In *Mitchell v. City of Dallas*, 855 S.W.2d 741 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994), the appellate court considered what statute was applicable to a negligence claim against the city of Dallas. The general statute, section 75.002 of the Civil Practice and Remedies Code, declared that an owner, lessee or occupant of real property does not owe an invitee any greater degree of care than is owed to a trespasser. *Mitchell*, 855 S.W.2d at 746 (citing section 75.002 of the Civil Practice and Remedies Code). The other statute, a part of the Texas Tort Claims Act, provided that a political subdivision, with regard to a premises defect, owes to a claimant the duty that a private person owes to a licensee on private property. *See id.* (citing section 101.022(a) of the Civil Practice and Remedies Code). The court found that the more general statutes "were intended to be laws of general application," *id.* at 746–47, while the Tort Claims Act was a specific law "applicable to governmental owners and occupiers of real property," and that, as a result, "the

specific controls over the general." *Id.* at 747. Significantly for our purposes here, the court cited section 311.026(b) of the Government Code for this proposition. *See id.* When the Supreme Court affirmed *Mitchell*, it similarly cited section 311.026(b) for the principle that "the specific controls over the general." *City of Dallas v. Mitchell*, 870 S.W.2d 21, 23 (Tex. 1994).

The standard set forth in section 311.026(b) thus means that the specific controls over the general, but it adds the following qualifying language: "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005). The relevant portion of the Natural Resources Code was enacted in 1937 in essentially the same language as that of today's law. *Compare* Act of Apr. 30, 1937, 45th Leg., R.S., ch. 279, §§ 1–3, 1937 Tex. Gen. Laws 568, 568–69, *with* Act of May 24, 1977, 65th Leg., R.S., ch. 871, §§ 71.001–.010, 1977 Tex. Gen. Laws 2345, 2504–05. The predecessor statute to section 253.005 containing the language "in such manner and upon such terms and conditions as the governing body of such town or city may determine" was enacted in 1975. *Compare* Act of May 17, 1975, 64th Leg., R.S., ch. 312, § 1, 1975 Tex. Gen. Laws 806, 806, *with* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, sec. 253.005, 1987 Tex. Gen. Laws 707, 1028. Thus, the Local Government provision is not only more specific; it is also the later-enacted statute. As a result, we conclude that with regard to a municipality's lease of its mineral property, subchapter A of chapter 71 of the Natural Resources Code irreconcilably conflicts with section 253.005 of the Local Government Code, and section 253.005, being the more specific enactment, prevails.

## S U M M A R Y

With regard to a municipality's lease of its mineral property, subchapter A of chapter 71 of the Natural Resources Code irreconcilably conflicts with section 253.005 of the Local Government Code, and as a result, section 253.005, being the more specific enactment, prevails.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee