**Opinion issued April 6, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00405-CV

———————————

### TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

### V.

### BRUCE GAIBLE, Appellee

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-65469**

---

### MEMORANDUM OPINION

This is an interlocutory appeal from the denial of a plea to the jurisdiction.

Appellee Bruce Gaible sued the Texas Department of Public Safety ("DPS") under

a premises liability theory for damages sustained when he fell in the parking lot of

a DPS office. DPS asserted sovereign immunity, arguing that Gaible had the status

of a licensee, not an invitee. In a single issue on appeal, the Department asserts that Gaible did not demonstrate a waiver of sovereign immunity. DPS maintains that it owed Gaible the duty owed to a licensee because Gaible did not pay for the use of the premises and that Gaible did not raise a question of fact about whether DPS had actual or constructive knowledge of the allegedly hazardous condition, which Gaible contends caused his parking lot fall.

We conclude that Gaible did not demonstrate a waiver of sovereign immunity sufficient to invoke the jurisdiction of the court. We vacate the trial court's order, and we render judgment dismissing Gaible's claims against DPS.

## Background

Appellee Bruce Gaible needed to renew his driver's license. He arrived at the office on Dacoma Street at approximately 7:30 a.m., before the office opened at 8:00 a.m. As he got out of his car, he noticed 30 or 40 people already were in line. He took "probably 10 or 12 steps or so," before his feet became entangled in "what turned out to be some wire." He fell on his right side, breaking his femur. Unable to use his broken leg, Gaible scooted toward his car to avoid being hit by parking lot traffic. A young woman, Meredith Kirk, approached him, offered help, and called 9-1-1 at his request. Kirk noticed a wire ring on the ground and tossed it onto the nearby grass while awaiting the arrival of emergency services.

2

Meanwhile, a DPS employee, who noticed Gaible on the ground, informed his supervisor Misty Verduzco that a man outside needed help. Verduzco, who had worked at the Dacoma Street DPS office for ten years was the acting supervisor at the time. Verduzco went outside, spoke to Kirk about the incident, and placed traffic cones to protect Gaible. Verduzco also took photographs, obtained a written statement from Kirk, and completed and submitted a DPS incident report.

Gaible was taken to the emergency room, where he underwent surgery. He stayed in the hospital for several days. He spent months recuperating and rehabilitating from his injuries.

Gaible sued DPS for damages under a premises defect theory of liability, alleging that DPS had a duty to warn of or make safe any condition that posed an unreasonable risk of harm and about which it had actual or constructive knowledge. DPS answered with a general denial and a plea to the jurisdiction asserting sovereign immunity. Gaible responded that he was an invitee because "he entered the premises with [DPS's] knowledge and for the mutual benefit of both parties," and because "[m]aintaining a current and active driver's license mutually benefits the State of Texas and its drivers." He argued that he pleaded a viable waiver of immunity under the Texas Tort Claims Act because DPS's premises "are used by the public to obtain or renew driver's licenses, a service for which the premises are held open to the public and for which the public pays." He asserted

that DPS reasonably should have known that the wire ring was in the parking lot and that it created a dangerous condition, but it negligently failed to inspect and maintain the premises. He attached the transcript of Verduzco's deposition in support of his contentions.

DPS responded with the following evidence: (1) Gaible's deposition transcript; (2) Verduzco's deposition transcript; (3) the internal incident report, Kirk's witness statement, and photos from the incident; (4) the janitorial contract and work log in effect at the time of the incident, along with a business records affidavit; and (5) the affidavit of DPS employee Sylvia Guerra.

DPS argued that Gaible has the status of a licensee, not an invitee, because paying for license renewal is not paying for the use of the premises. DPS further argued that the standard of care for a licensee requires actual knowledge on the part of the defendant, not the lesser standard of constructive knowledge. DPS asserted that its evidence showed that it had neither actual knowledge nor constructive knowledge of the existence of the wire ring before Gaible's accident. Verduzco testified that she did not know how or when the wire ring came to be present in the parking lot, and she said that she was not aware of any prior slip-and-fall accidents during the ten years she had worked at that location. Janitorial records indicated that the parking lot had been cleaned of paper and trash the night before Gaible's fall. Guerra averred in her affidavit that she was the regional

4

manager, she had searched the records, and there were no records of injuries in the parking lot due to dangerous conditions, including tripping hazards. In addition, Gaible and Verduzco both testified that the ring was not conspicuous though it could be seen by the naked eye.

The trial court denied the plea to the jurisdiction, and DPS appealed.

<strong>Analysis</strong>

In a single issue on appeal, DPS argues that the trial court erred by denying its plea to the jurisdiction because the undisputed evidence established that DPS lacked both actual and constructive knowledge of the existence of the wire ring in its parking lot.

## I.    Legal standards

### A.    Standard of review on plea to the jurisdiction

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction, which we review de novo. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). A plea to the jurisdiction may also challenge the existence of jurisdictional facts or implicate the

5

merits of the plaintiff's cause of action. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). Because a plea to the jurisdiction is a dilatory plea, a plaintiff is not required to put on her case simply to establish jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

When a plea to the jurisdiction challenges jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion." *Garcia*, 372 S.W.3d at 635. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Garcia*, 372 S.W.3d at 635. But if the evidence raises a fact issue about jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Miranda*, 133 S.W.3d at 228. Thus, to avoid dismissal, a plaintiff must establish the existence of a genuine question of material fact on the jurisdictional issue. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771.

**B.     Governmental immunity and the Texas Tort Claims Act**

Governmental immunity, like sovereign immunity from which it is derived, exists to protect political subdivisions, such as municipalities, from suit and liability for monetary damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008). Governmental immunity deprives a trial court of

subject matter jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature. *See Garcia*, 372 S.W.3d at 636; *Miranda*, 133 S.W.3d at 225–26. "We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous." *See Mission Consol.*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE § 311.034). Thus, we initially focus exclusively on the statute permitting a party to sue the state, without regard to evidence of injury or the need for a party to have a remedy for a violation of his rights. *See id.*

The Legislature has expressly waived immunity to the extent provided by the Texas Tort Claims Act. *See Mission Consol.*, 253 S.W.3d at 655; *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109 (TTCA). As relevant to this appeal, the TTCA generally waives governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2); *see State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006) ("The Texas Tort Claims Act includes, among other things, a limited waiver of the state's immunity from suits alleging personal injury or death caused by premises defects."). Because premises defect claims have heightened standards, a claim for a premises defect must be analyzed under the more specific provisions in section 101.022 of the TTCA. *Sampson v.*

7

*Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016). Under section 101.022, when a claim arises from a premises defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a); *see Shumake*, 199 S.W.3d at 283. "If the plaintiff pays for the use of the premises, the governmental unit owes the plaintiff the duty owed to an invitee." *Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *1 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (quoting *City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex. App.—Dallas 2009, no pet.)).

## C. Premises liability

"The threshold question in a premises liability case is whether the defendant owes a duty to the injured plaintiff." *Watanabe v. Summit Path Partners, LLC*, 650 S.W.3d 112, 125 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, no pet.) (citing *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020)). The existence of a duty is a question of law for the court to decide based on the facts of the case. *Hillis*, 602 S.W.3d at 440. For a duty to exist, the defendant must have possession or control over the premises where the injury occurred. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). The nature of the duty owed depends on the plaintiff's status, for example as an invitee or licensee. *See Hillis*, 602 S.W.3d at

8

440; *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Watanabe*, 650 S.W.3d at 125.

"To prevail in a premises-liability case, the invitee plaintiff must show that (1) the owner had actual or constructive knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the owner's failure to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries." *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 n.4 (Tex. 2022) (per curiam) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). A landowner generally has no duty to warn invitees of hazards that are open, obvious, or known to the invitee. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203–04 (Tex. 2015).

"The duty owed to a licensee on private property requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Sampson*, 500 S.W.3d at 391 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). Absent willful, wanton, or grossly negligent conduct, to prevail in a premises-liability case, the licensee plaintiff must show that: (1) a condition of the premises created an unreasonable risk of harm to

9

the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee. *Payne*, 838 S.W.2d at 237.

## II.   Gaible is a licensee because he did not pay for the use of the premises.

The parties dispute whether Gaible is a licensee or an invitee. DPS asserts that Gaible is a licensee because driver's license renewal fees merely relate to the premises. Gaible maintains that he paid for the use of the premises because he intended to pay license renewal fees and that absent his availing himself of DPS services at its office, he would not have been allowed to stay there.

Texas courts interpreting section 101.022(a) have determined that to constitute paying a fee for the use of the premises, the fee must be paid specifically for entry onto and use of the public premises. *See City of Houston v. Crawford*, No. 01-18-00179-CV, 2018 WL 4868306, at *3 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (mem. op.) (quoting *City of Dallas v. Davenport*, 418 S.W.3d 844, 847–48 (Tex. App.—Dallas 2013, no pet.)). For example, the Fort Worth court of appeals held that paying to hold a private event at a public premises during hours when the public is otherwise excluded was payment "for the use of the premises" under the TTCA. *See Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *8 (Tex. App.—Fort Worth May 19, 2011, pet. denied)

10

(mem. op.) (holding that plaintiff was invitee because payment of rental fee to hold wedding reception in city park after closing hours was payment for use of premises). Courts have found invitee status where the plaintiff entered the premises through use of a paid membership and when the plaintiff paid tuition to a school where she slipped and fell.[1] *City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex. App.—Dallas 2011, no pet.) (holding that plaintiff was invitee because she obtained entry to city zoo through her mother's paid membership); *Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (holding that slip-and-fall plaintiff was invitee because payment of tuition was payment for use of state-owned law school premises).

On the other hand, Texas courts have concluded that payment that merely relates to the premises did not constitute payment "for the use of the premises" under the TTCA. *See City of Houston v. Crawford*, No. 01-18-00179-CV, 2018

---

[1] Courts of appeals have also found that payment of fees to a third party, who in turn paid the city for the use of the public premises by their patrons or members constituted payment "for the use of the premises" under the TTCA. *See City of Houston v. Gilbert*, 656 S.W.3d 603, 614 (Tex. App.—Houston [14th Dist.] Nov. 10, 2022, pet. filed) (concluding that "payments made indirectly to a municipality through an intermediary—such as a little league—can be sufficient evidence to raise a fact issue on invitee status under section 101.022(a), as long as the payment specifically allowed the claimants to use the premises"); *City of Fort Worth v. Posey*, 593 S.W.3d 924, 930–31 (Tex. App.—Fort Worth 2020, no pet.) (holding that plaintiff raised question of fact about invitee status because payment of parking fee to city and payment of entry fee to civic organization that in turn paid city to rent premises for patrons' use was payment for use of premises).

WL 4868306, at *3 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (holding that plaintiff who slipped and fell in airport terminal was licensee because purchase of airline ticket did not constitute payment for use of premises); *Davenport*, 418 S.W.3d at 847–48 (same); *Churchman v. City of Houston*, No. 01-96-00211-CV, 1996 WL 544250, at *2–3 (Tex. App.—Houston [1st Dist.] Sept. 26, 1996, writ denied) (mem. op.; not designated for publication) (same). For example, payment of taxes and driver's license fees are not payments for the use of the premises. *See State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786–87 (Tex. 1993) (holding that payment of vehicle registration and licensing fees was not payment for use of premises when plaintiffs sued for injuries from motor vehicle accident on icy bridge), abrogated on other grounds by *Denton Cnty. v. Beynon*, 283 S.W.3d 329 (Tex. 2009); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 746–47 (Tex. App.—Dallas 1993) (holding that payment of city taxes alone did not confer invitee status on plaintiff who fell from bicycle at municipal park), *aff'd*, 870 S.W.2d 21 (Tex. 1994); *Garcia v. State*, 817 S.W.2d 741, 743 (Tex. App.—San Antonio 1991, writ denied) (holding that payment of driver's license fees and fuel taxes did not confer invitee status on plaintiff who sued for damages sustained in highway accident). And the Fourteenth Court of Appeals has held that payment of a filing fee in a divorce case was not a payment for the use of the premises,

12

when the plaintiff slipped and fell on wet courthouse steps. *Simpson v. Harris Cnty.*, 951 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1997, no writ).

In this case, Gaible argues that he has the status of an invitee because he was in the parking lot near the DPS office because he intended to renew his driver's license, in part by paying the fees. This is a case where the payment–or intended payment–merely relates to the premises. *See Crawford*, 2018 WL 4868306, at *3. On appeal, Gaible argues that the DPS office is not open to the public the way a park or library is open to the public. Our standard does not require us to consider whether the public premises in question is fully accessible to the public. Rather, section 101.022(a) requires us to determine whether the plaintiff has paid for the use of the premises. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(a). We are required to strictly construe statutes waiving governmental immunity, and there is neither a pleading nor jurisdictional evidence to show that Gaible paid for the use of the parking lot where his accident occurred. *See Mission Consol.*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE § 311.034).

Gaible also argues that he should be considered an invitee, not a licensee, because he entered the DPS premises to renew his driver's license, which he contends was for the mutual benefit of himself and the state. In a premises liability case in which the defendant is a private party, an invitee is "one who enters the property of another with the owner's knowledge and for the mutual benefit of

13

both." *Austin*, 465 S.W.3d at 202 (quoting *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996)). While the TTCA generally waives immunity for premises liability "if the governmental unit would, were it a private person, be liable to claimant" under Texas law, *see* TEX. CIV. PRAC. & REM. CODE § 101.021(2), it also modifies the elements of a premises liability case by limiting the duty owed by a governmental unit. *See id.* § 101.022; *Harris Cnty. v. Shook*, 634 S.W.3d 942, 953 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). Gaible's argument attempts to import the status of invitee from cases involving private premises into the public premises context, and in doing so, this argument ignores the specific requirements of section 101.022(a). This is improper, because a premises liability claim against a governmental entity must be analyzed under the more specific provisions in section 101.022 of the TTCA. *See Sampson*, 500 S.W.3d at 386.

Accordingly, we conclude that Gaible had the status of a licensee because he did not pay for the use of the premises.

**III. Gaible did not show that there is a question of fact about DPS's actual knowledge of the alleged hazard.**

DPS argues that Gaible did not demonstrate that governmental immunity has been waived in this case. Because Gaible is a licensee, to demonstrate a waiver of sovereign immunity, he was required to establish that the wire ring posed an unreasonable risk of harm, DPS had actual knowledge of its presence in the parking lot before the incident, and that DPS failed to warn about wire ring or

14

remove it. *See Sampson*, 500 S.W.3d at 391. DPS argues that its jurisdictional evidence conclusively proved that it did not have actual knowledge of the presence of the wire ring in the parking lot before the incident.

To prove actual knowledge, a licensee must show that the premises owner actually knew that the dangerous condition existed at the time of the incident. *Sampson*, 500 S.W.3d at 392. Prior reports of injuries caused by the dangerous condition or the potentially dangerous nature of the condition is some evidence that the owner had actual knowledge of the dangerous condition. *Id.* The absence of such evidence, however, does not negate actual knowledge, and circumstantial evidence can establish actual knowledge so long as it supports such a conclusion directly or by reasonable inference. *Id.*

In his brief, Gaible concedes that there are no facts to show that DPS had actual knowledge of the wire on the lot. He instead argues that he was an invitee and that DPS had constructive knowledge of the presence of the wire ring on the lot and its potential hazardousness. We have already concluded that Gaible was a licensee, and, therefore, Gaible's arguments are unavailing.

Moreover, DPS produced jurisdictional evidence that established that it did not have actual knowledge of the wire on the lot. Verduzco testified that she had worked at the Dacoma Street office for ten years and was not aware of any prior incidents when a person fell due to a tripping hazard. Sylvia Guerra, a regional

15

manager since 1996, averred that she is responsible for overseeing the DPS office on Dacoma Street, and she has access to DPS records regarding reports of injuries on the premises. She averred that there were no reports of injuries alleged to have resulted from a dangerous condition in the parking lot before December 28, 2018, and specifically, no reports of wire rings or other tripping hazards in the parking lot before December 28, 2018. The janitorial contract showed that picking up trash and paper in the parking lot was a daily service, and the work log indicated that this service was performed the night before Gaible's accident.

We conclude that Gaible failed to demonstrate a question of fact existed as to whether DPS had actual knowledge of the wire ring that he contends caused his accident. Accordingly, governmental immunity has not been waived in this case, and we hold that the trial court erred by denying DPS's plea to the jurisdiction.

We sustain DPS's sole issue.

### Conclusion

We vacate the trial court's order denying the plea to the jurisdiction, and we render judgment dismissing Gaible's claims against DPS.


                                           Peter Kelly
                                           Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.