**CITY OF IRVING, Appellant,**

v.

**Maria SEPPY, Individually, and as Representative of the Estate of Rudolph Seppy, Deceased, and Adriana Chappell, Appellees.**

**No. 05–09–00017–CV.**

Court of Appeals of Texas, Dallas.

Nov. 23, 2009.

Paul K. Pearce, Jr., Matthews, Carlton, Stein, Shiels, Pearce, Dunn & Knott, Dallas, TX, for Appellant.

Stephen Daniel, Clay Lewis Jenkins, Jenkins & Jenkins, P.C., Waxahachie, TX, F. Leighton Durham, Durham & Pittard, LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, BRIDGES, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Appellees (collectively, the "Seppy Family") sued the City of Irving and others because of Rudolph Seppy's death after he fell from a catwalk in a city-owned theater. The City filed a plea to the jurisdiction that the trial court granted in part and denied in part. In a single issue, the City contends it retained immunity for claims arising out of discretionary decisions made in the performance of its governmental function; alternatively, its immunity was not waived under the Texas Tort Claims Act (TTCA). We affirm.

## BACKGROUND

The City owns and operates the Irving Performing Arts Center, which was designed by architectural firm F & S Partners Incorporated and built by Lloyd Plyler Construction, L.P. On October 15, 1990, the City received certification from F & S Partners that construction of the Arts Center was "sufficiently complete" and in accordance with the plans and specifications in the parties' contract. The certification stated the City could "occupy or utilize" the Arts Center for its intended use while Lloyd Plyler completed or corrected certain work items identified in a punch list. The punch list was prepared by Lloyd Plyler and verified by F & S Partners. Many of the punch list items remained pending after the Arts Center was "sufficiently complete."

The Arts Center houses, among other things, theater space available for use by organizations hosting theatrical performances. One such organization is Irving Community Theater, Inc., a non-profit corporation. In 2005, ICT signed a facilities use agreement for the Dupree Theater, the smaller of the two theaters located in the Arts Center, for a March 2006 production of *Nunsense*. The Dupree Theater includes a catwalk, which is suspended from I-beams attached to the ceiling and spans horizontally above the audience portion of the theater. The floor of the catwalk is approximately four feet wide and consists of forty to eighty pound metal grates resting on a metal structure. The catwalk was designed by F & S Partners and fabricated by Lloyd Plyler. According

to the City's Building Supervisor for the Arts Center, Ross Moroney, the catwalk "had not been changed or modified" since construction of the Arts Center was completed. On March 14, 2006, while assisting during a dress rehearsal for ICT's production of *Nunsense,* ICT's long-time volunteer Rudolph Seppy suffered severe head injuries when he fell from the catwalk. Mr. Seppy later died from his injuries.

Seppy's wife and daughter brought a wrongful death and survival action against F & S Partners asserting negligence in the design and construction oversight of the catwalk. Thereafter, the Seppy Family amended their petition to include defendants Lloyd Plyler, the City, and ICT. As to the City, the Seppy Family complains of an unreasonably dangerous premises condition, which the City knew or should have known about, and alleges the City was negligent in failing to maintain the catwalk in a safe condition, warn of the unsafe condition, and repair the dangerous condition of the catwalk. The Seppy Family alleges the City's failure to protect against an unreasonable risk of harm proximately caused their injuries.

The City filed a plea to the jurisdiction, asserting immunity from suit. Both parties presented evidence as part of the jurisdictional proceeding. The trial court found the TTCA applied to the Seppy Family's claims because the City was engaged in the performance of a governmental function. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon 2008). The trial court granted the City's plea in part and dismissed the Seppy Family's claims against the City to the extent those claims encompass design decisions or deficiencies. The trial court denied the remainder of the City's plea without specifying a basis for the denial. This interlocutory appeal followed. *Id.* § 51.014(a)(8).

## LEGAL STANDARDS

### Standard of Review

 Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). Whether a court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226; *Perez v. City of Dallas,* 180 S.W.3d 906, 909 (Tex.App.-Dallas 2005, no pet.). Accordingly, we review de novo a challenge to the trial court's subject matter jurisdiction. *Miranda,* 133 S.W.3d at 226; *Perez,* 180 S.W.3d at 909.

 A court is not required to look solely to the pleadings; rather, it may consider evidence and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). In reviewing a plea to the jurisdiction where, as here, evidence is submitted that implicates the merits of the case, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda,* 133 S.W.3d at 227–28. This standard generally mirrors our summary judgment standard under Texas Rule of Civil Procedure 166a(c), and the burden is on the governmental unit as movant to meet the standard of proof. *Id.* at 228. After the governmental unit asserts and provides evidentiary support for its plea, the nonmovants are required to show only that a disputed material fact issue exists. *Id.; City of Dallas v. Heard,* 252 S.W.3d 98, 102 (Tex.App.-Dallas 2008, pet. denied). If the relevant evidence fails to raise a fact question or is undisputed on

the jurisdictional issues, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

## Waiver of Immunity Under the Texas Tort Claims Act

██ Governmental immunity protects political subdivisions of the State, including cities, from suit and liability. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 & n. 3 (Tex.2003); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (defining "governmental unit" to include political subdivisions of the state, including cities). The Legislature, however, created a limited waiver of a city's immunity under the TTCA, permitting suits against governmental units in three areas: (1) injuries caused by the operation or use of publicly-owned vehicles or equipment; (2) injuries caused by a condition or use of tangible personal or real property; and (3) injuries caused by premises defects. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(1)(A) & (2), 101.022, 101.025(a); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex.2006); *City of Weston v. Gaudette*, 287 S.W.3d 832, 836 (Tex.App.-Dallas 2009, no pet.).

██ The type of duty owed a plaintiff is part of the waiver analysis under the TTCA. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021 & 101.022. In an ordinary premises defect case, the governmental unit owes the plaintiff "only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). This limited duty requires the landowner to avoid injuring the claimant through willful, wanton, or grossly negligent conduct and to use ordinary care either to warn the licensee of, or make reasonably safe, a dangerous condition of which the landowner is aware and the licensee is not. *State Dep't of Highways & Pub. Transp. v.*

*Payne*, 838 S.W.2d 235, 237 (Tex.1992); *see also City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex.2008) (per curiam). If the plaintiff pays for the use of the premises, the governmental unit owes the plaintiff the duty owed to an invitee. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 747 (Tex.App.-Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994). The duty owed an invitee "requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware." *Payne*, 838 S.W.2d at 237.

## Exception to Waiver of Immunity for Discretionary Decisions

██ The Legislature also created certain exceptions to the TTCA's limited waiver of immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.051–.066. Under section 101.056, a city's immunity is preserved not only for its discretionary or public policy decisions, but also for its failure to act when no particular action is required by law. *See id.* § 101.056; *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex.2007). Section 101.056's discretionary function exception is designed to "avoid judicial review of governmental policy decisions." *Perez*, 180 S.W.3d at 911. Thus, if a plaintiff's injury results from the formulation of policy, the governmental unit is immune from liability. *Id.* A governmental unit is not immune from liability, however, if a plaintiff's injury is caused by the negligent implementation of that policy or the negligent maintenance of the premises. *Id.*; *Flynn*, 228 S.W.3d at 657–58 (university not immune for operational- or maintenance-level decisions); *Mitchell*, 855 S.W.2d at 745 (holding city not immune from liability for claims based on negligent

maintenance). Whether a particular governmental activity is discretionary and within the exception to the waiver of immunity is a question of law. *Flynn,* 228 S.W.3d at 657.

## ANALYSIS

### Section 101.056 Exception for Design Decisions

■ The City first argues the trial court erred in not granting its plea to the jurisdiction in its entirety because the Seppy Family's claims against the City arise out of the deficient design of the catwalk and qualify under the section 101.056 exception. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.056. The City's argument is premised on the conclusion that the Seppy Family's claims can only relate to the design of the catwalk because the catwalk was never repaired or "changed or modified in any fashion" since the completion of the Arts Center; "such was the limited extent of the City's involvement in placing the catwalk in the condition it was in at the time of Seppy's accident." Because immunity is not waived for design decisions, the City maintains it is immune from suit as a matter of law. *See id.* We disagree with the City's analysis.

■ While design decisions made by the City are discretionary and immune from liability, "[m]aintenance activities undertaken at the operational level are not discretionary functions and are not immune from liability." *Univ. of Tex. at San Antonio v. Trevino,* 153 S.W.3d 58, 62 (Tex.App.–San Antonio 2002, no pet.); *see also Flynn,* 228 S.W.3d at 658; *City of Fort Worth v. Gay,* 977 S.W.2d 814, 817 (Tex.App.-Fort Worth 1998, no pet.). Our review of the Seppy Family's petition reveals their claims against the City relate not to the design of the catwalk but to how the catwalk was maintained and repaired.

Specifically, the Seppy Family alleged the City was negligent in failing to (1) maintain the catwalk in a reasonably safe condition; (2) adequately warn Seppy of the catwalk's unsafe condition; and (3) fix or repair the dangerous condition of the catwalk. The Seppy Family also alleged the City and other defendants were negligent in, among other things, "[f]ailing to monitor, maintain, inspect and insure [catwalk] integrity" in the Dupree Theater and that such negligence proximately caused their injuries. These allegations are separate and distinct from the allegation of negligence in "failing to properly design and/or build" the catwalk, which was alleged only against Lloyd Plyler.

Construing the Seppy Family's pleadings liberally, as we must do, we conclude the allegations against the City attack the condition of the catwalk at the time of Seppy's accident, rather than decisions relating to the design of the catwalk, and that the Seppy Family's allegations show an intent to prove the City's claimed failure to maintain and fix the catwalk caused their injuries. *Miranda,* 133 S.W.3d at 230; *Heard,* 252 S.W.3d at 108. Accordingly, the Seppy Family sufficiently alleged maintenance activities on the City's part that were not discretionary and thus, not within the scope of section 101.056. *See Trevino,* 153 S.W.3d at 63. We overrule the City's issue as it relates to immunity under section 101.056.

### Waiver of Immunity

Having determined the Seppy Family's allegations against the City do not fall within the scope of section 101.056, we next address the City's alternative arguments related to whether its immunity was waived. The City argues its immunity was not waived under the TTCA because (1) the Seppy Family's claims relate to acts or omissions by independent contractors, not

City employees; (2) it did not have actual knowledge of the alleged unreasonably dangerous condition at the time of the accident, and it therefore did not breach any duty owed to Seppy; (3) as a lessor, it owed no duty for any alleged dangerous condition on the leased premises; and (4) ICT's agreement with the City contained an "as is" clause, and the City did not breach any duty to Seppy as a matter of law. The Seppy Family bears the burden of pleading facts affirmatively demonstrating waiver of the City's immunity under the TTCA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (governmental liability), 101.025(a) (waiver of immunity); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002) (burden). They must also raise a fact question on the jurisdictional facts if the City supports its jurisdictional plea with evidence. *Miranda*, 133 S.W.3d at 228.

### Acts or Omissions of Independent Contractors

■ The City first maintains the trial court erred in partially denying its plea to the jurisdiction because the Seppy Family's claims relate to acts or omissions by F & S Partners and Lloyd Plyler, which were independent contractors, not City employees. Under the TTCA, the City contends it can be held liable only for the acts or omissions of its own employees. Like its contention under section 101.056, the City argues the basis of the Seppy Family's claims can only result from the acts or omissions of F & S Partners and Lloyd Plyler during the design and construction of the Arts Center because no repairs or modifications were made by the City. We agree the TTCA does not waive a governmental unit's immunity for the acts or omissions of independent contractors. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2) (TTCA defini-

tion of "Employee" does not include "an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control"); *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex.App.-Beaumont 1995, no writ); *see also Dumas v. Muenster Hosp. Dist.*, 859 S.W.2d 648, 650 (Tex. App.-Fort Worth 1993, no writ). Looking to the pleadings, however, the Seppy Family alleged premises claims against the City for *its* failure to maintain and fix the catwalk, as well as its failure to warn Seppy of a dangerous condition. These allegations do not implicate any act or omission by F & S Partners or Lloyd Plyler. We therefore reject the City's argument relating to the acts or omissions of independent contractors.

### Actual Knowledge of a Premises Defect

■ The City next contends it legally established no waiver of immunity because Seppy was a licensee, and the City had no actual knowledge of a dangerous condition likely to cause injury at the time of Seppy's accident. The Seppy Family asserts Seppy's status was that of an invitee—not a licensee—at the time of his accident. Generally, this distinction is important because the Seppy Family need only show the City reasonably should have known of the defect if Seppy was an invitee. *Payne*, 838 S.W.2d at 237. If Seppy was a licensee, the Seppy Family must show the City had actual knowledge of the alleged defect at the time of the accident. *Id.* In this case, however, we need not decide whether Seppy was an invitee or licensee at the time of his accident because we conclude the Seppy Family raised a fact issue under the more limited duty owed by the City to

a licensee [1]—that is, the pleadings and jurisdictional evidence show a fact issue exists regarding the City's actual knowledge of a premises defect. *See, e.g., City of San Antonio v. Rodriguez,* 931 S.W.2d 535, 537 (Tex.1996) (per curiam) (rejecting city's complaint there was no evidence it knew of dangerous condition of water on the floor of basketball court); *Simons v. City of Austin,* 921 S.W.2d 524, 528 (Tex.App.-Austin 1996, writ denied) (holding evidence supported finding city had actual knowledge of danger).

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart,* 249 S.W.3d 412, 414–15 (Tex.2008) (per curiam); *City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006) (per curiam). In determining whether a landowner such as the City has actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008) (per curiam); *see also Reed,* 258 S.W.3d at 622–23 (no prior accidents or complaints about road condition contributed to conclusion of no actual knowledge at the time of the motorcycle accident). Lack of notice of similar accidents from third parties, however, does not conclusively negate actual knowledge. *Mitchell,* 855 S.W.2d at 749. Actual knowledge of an unreasonably dangerous condition can sometimes be proven through circumstantial evidence.

*See City of Austin v. Leggett,* 257 S.W.3d 456, 476 (Tex.App.-Austin 2008, pet. denied); *see also Simons,* 921 S.W.2d at 528 & n. 2 (concluding evidence of two experts who testified of dangerous condition and city "must have known" of the danger was circumstantial evidence of city's actual knowledge). "Circumstantial evidence establishes actual knowledge when it 'either directly or by reasonable inference' supports that conclusion." *Stewart,* 249 S.W.3d at 415 (quoting *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002)).

In support of its contention that it did not know of a dangerous condition, the City presented evidence through two City employees, Moroney and Kass Prince, Assistant Executive Director of Operations & External Program, and two ICT members, Deborah Kay Hurley and Binne Tomaro, that there had been no prior accidents, complaints, or problems involving the catwalk. Hurley, who had been with Seppy on the catwalk immediately before he fell, testified she did not see anything that appeared to be unsafe and the catwalk appeared to be "normal-looking and operating normal." The City further presented affidavit testimony from representatives of F & S Partners and Lloyd Plyler confirming that construction on the Arts Center had been completed in 1990. The City also presented the "Certificate of Substantial Completion" from F & S Partners and the "Application and Certificate for Payment," dated June 13, 1994, from Lloyd Plyler, both of which stated the construction "had been completed in accordance with the Contract Documents." Moroney also attested that from the time construction on the Arts Center was completed in

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b) (recognizing section 101.022(a)'s limitation upon duty owed by governmental unit, requiring actual knowledge of dangerous condition); *Robnett v. City of Big Spring,* 26 S.W.3d 535, 537 (Tex.App.-Eastland 2000, no pet.). *Cf. Tex. Dep't of Transp. v. York,* 284 S.W.3d 844, 847 (Tex. 2009) (noting invitee standard is more "lenient" standard).

1990, "the portion of the catwalk where the accident in question occurred had not been changed or modified" and no other repairs had ever been made to the catwalk because "none were needed."

To raise a fact issue regarding the City's actual knowledge that the catwalk from which Seppy fell was dangerous, the Seppy Family relies on evidence that, in 1991, the City received copies of correspondence directed to F & S Partners and Lloyd Plyler, which included various punch list items related to the grating in the Dupree Theater. One letter, dated March 8, 1991, included a field report performed by an engineering and architectural consulting firm, and stated the Dupree Theater "safety chains on catwalk do not have clips" and "[t]he grating at all levels is very loose and bounces when walked upon." Another letter from F & S Partners to Lloyd Plyler, dated November 6, 1991, showed Lloyd Plyler's failure to fix certain issues, stating "[a]fter one full year of occupancy by the [City], the attached list of items have not been resolved." The November 6 letter attached the field report, which included the punch list items related to the catwalk and grating. No evidence was presented showing the items were ever resolved.

The Seppy Family also relies on the American National Standards Institute Bar Grating Manual For Steel, Stainless Steel, and Aluminum Gratings and Stair Treads, which provides "[a]ll gratings are to be firmly anchored to their supports by positive means." Further, the Seppy Family presented the affidavit of its expert engineer, Deepak Ahuja, who testified in his professional opinion that the condition of the catwalk was "a significant and im-

mediate safety hazard" because the walking surface of the catwalk was "not secured to its supports by positive means at any observed location." The expert's affidavit concluded the City was negligent in failing to secure the grating at the Dupree Theater. Based on the documents he reviewed, some of which were not part of the record, Ahuja attested the City "had prior actual knowledge of the problems and dangers with the grating and did not remedy the problems after being informed of the defective and dangerous condition of the grating."

The evidence before us—the 1991 correspondence, noting the "very loose" and "bouncy" grating, coupled with the City's responsibility for maintenance, as well as its statements the catwalk had not been changed or modified since 1990, and the expert's conclusions the City knew the catwalk was dangerous—is more than a scintilla of evidence to show the City had actual knowledge of the catwalk's condition at the time of Seppy's fall. When we "indulge every reasonable inference and resolve any doubts in [the Seppy Family's] favor," we conclude the Seppy Family raised a jurisdictional fact issue regarding the City's knowledge of a premises defect. *See Miranda*, 133 S.W.3d at 228. Accordingly, we reject the City's argument that there was no waiver of its immunity because it had no knowledge of a premises condition.

### Lessor's Duty of Care

 In its third alternative argument, the City claims it owed no duty of care to Seppy because of its lessor status of the Dupree Theater.[2] Generally, a les-

---

**2.** The landlord-tenant relationship is created by contract and is a question of fact. *Brown v. Johnson*, 118 Tex. 143, 12 S.W.2d 543, 545 (1929). No particular words are necessary to create such a relationship, "but it is indis-

pensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them." *Id.; see also B. & B. Vending Co. v. Ducharme*, 349 S.W.2d 630, 633 (Tex.Civ.

sor owes no duty to tenants or their invitees for dangerous conditions on leased premises. *Brown*, 118 Tex. at 146, 12 S.W.2d at 545. This is because in a lease arrangement, the lessor transfers possession and control of the leased premises to the tenant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996); *Brenham Housing Auth. v. Davies*, 158 S.W.3d 53, 59 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Texas courts recognize certain exceptions to the general no-duty rule. *Endsley*, 926 S.W.2d at 285. "A lessor may be liable for injuries arising from (1) the lessor's negligent repairs, (2) concealed defects of which the lessor was aware when the premises were leased, and (3) a defect on a portion of the premises that remained under the lessor's control." *Kukis v. Newman*, 123 S.W.3d 636, 639–40 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see also Daitch v. Mid–Am. Apartment Communities*, 250 S.W.3d 191, 194–95 (Tex.App.-Dallas 2008, no pet.).

The Seppy Family relies on the third exception and argues the City can be held liable as a lessor because "there is significant evidence the City of Irving maintained control over the injury-producing defect." The City counters, however, that even though it may have had an obligation to maintain the Dupree Theater, this responsibility is insufficient to establish it retained control over the premises. The City also asserts it did not make negligent repairs to the catwalk because "none were needed." The jurisdictional evidence shows the City provided maintenance, repair, and cleaning for the Dupree Theater.

In addition, the use agreement's schedule, detailing the "periods of time said facility shall be available to [ICT]," demonstrates the City determined the times in which ICT could enter to use the theater, noting the "[t]imes listed will be the times that the doors are opened and closed." Based on the evidence before us, we conclude the Seppy Family sufficiently raised a fact issue regarding the City's control over the catwalk. Accordingly, we reject the City's argument urging immunity as a lessor of the premises with no duty of care to Seppy.

### *"As Is" Provision*

In its final alternative argument, the City contends it did not waive its immunity from suit because the use agreement with ICT contained an "as is" provision, which negated any duty owed as a matter of law. An "as is" provision, however, is not binding on those who were not parties or third-party beneficiaries of the contract containing the provision. *See, e.g., Haire v. Nathan Watson Co.*, 221 S.W.3d 293, 301 (Tex.App.-Fort Worth 2007, no pet.) (holding "as is" provision in sales contract not available as defense to those who were not parties to contract). Here, Seppy was not a party to the use agreement with the Arts Center. Nor do the parties contend Seppy was a third-party beneficiary of that agreement. Therefore, we conclude the "as is" provision contained in the use agreement is inapplicable under these circumstances. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) (recognizing nature of transaction and totality of circumstances, including

---

App.-Dallas 1961, writ ref'd n.r.c.). In this case, the relationship between the Arts Center and ICT was governed by a Facilities Use Agreement, which granted ICT "permission ... to use and occupy" the Dupree Theater and additional rooms in the Arts Center on certain dates and for certain times. The

City's contention that it owed no duty of care to Seppy assumes the use agreement created a landlord-tenant relationship between the Arts Center and ICT. We make no determination, however, whether the use agreement at issue constitutes a lease.

whether provision was negotiated and entered into by parties of relatively equal bargaining power, must be considered in determining enforceability of "as is" provision). We reject the City's argument that it retained its immunity by virtue of the "as is" provision in the ICT use agreement. We overrule the City's sole issue.

## CONCLUSION

We conclude the Seppy Family's allegations against the City do not fall within the scope of section 101.056's exception for discretionary decisions. We also conclude the liability theories pleaded and the jurisdictional evidence presented raise a fact issue regarding the City's waiver of immunity for the claims asserted. Accordingly, the trial court did not err in partially denying the City of Irving's plea to the jurisdiction. The trial court's order is affirmed.