Opinion issued March 31, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00228-CV

———————————

NGOZI
OGUERI, Appellant

V.

TEXAS SOUTHERN UNIVERSITY, Appellee



 



 

On Appeal from the 113th District Court

Harris County, Texas



Trial Court Case No. 2009-12939

 



 

MEMORANDUM OPINION

          This
is a slip-and-fall case.  Appellant, Ngozi
Ogueri, appeals the trial court’s grant of appellee Texas Southern University’s
(TSU) plea to the jurisdiction.  In five
issues, Ogueri argues that (1) the trial court erred in granting TSU’s plea to
the jurisdiction because TSU’s governmental immunity was expressly waived by
Texas Civil Practice and Remedies Code section 101.021(2);[1] (2) the record “compels the
conclusion” that the slippery floor was a dangerous condition that created an
unreasonable risk of harm; (3) the trial court erred because Ogueri paid for
use of the premises and thus should be regarded as an invitee in analyzing her
premises defect claim; (4) the trial court erred in granting the plea because
Ogueri was unaware of any dangerous condition, and TSU could have discovered
the slippery condition of the floor through reasonable inspection and failed in
its duty to warn Ogueri; and (5) the trial court erred in allowing TSU to use
information it withheld from Ogueri during discovery under a claim of
privilege.

          We
affirm.

Background

          On
January 17, 2007, Ogueri, a law student at the Thurgood Marshall School of Law
at TSU, fell and sustained injuries to her ankle requiring surgery.  Ogueri subsequently filed suit against TSU.  She alleged in her petition that “she slipped
and fell on the hard highly polished floor” and that 

prior to [her] fall, other
students had slipped on the floor or/and had complained about the unusually or
extremely slippery nature of the floor even when the floor was dry.  This condition had existed for several months
prior to this incident, and [TSU’s] agents were aware of the condition but did
not address the problem.  Moreover, it
had rained that morning but no “wet floor” signs had been placed to warn about
the dangerous condition.  [TSU] placed
the “wet floor” signs only after [Ogueri] fell.

 

Ogueri also alleged that TSU owed her the duty owed
to an invitee.

TSU filed a plea to the jurisdiction
arguing that Ogueri was a licensee, not an invitee, and that, as a licensee,
she could not establish that TSU had actual knowledge of the allegedly
dangerous condition.  TSU also argued
that Ogueri could not show that she had no knowledge of the alleged condition
or that the condition itself created an unreasonable risk of harm.  TSU supported its plea with the affidavit of
Gloria Walker, the Chief Operating Officer and Executive Vice President of TSU,
who averred that the Risk Management Department maintained records of all
incidents and claims involving personal injury dating back to 1999 and that
there were no reports or records of any incidents regarding the floor in the
area where Ogueri fell.  TSU also attached
similar affidavits from Theresa Harrison, the Police Records Supervisor for the
University Police and Public Safety Department, and Timothy Rychlec, TSU’s
Executive Director of Facilities and Maintenance.  TSU also provided a copy of Ogueri’s Spring
2007 financial statement, which indicated that she was billed for the Spring
semester in November 2006 and made her first payment for the semester on
January 31, 2007, after the date of her fall.

TSU also supported its plea with
Ogueri’s deposition testimony.  In her
deposition, Ogueri testified that she did not know what caused her to slip and
fall, or whether there was anything on the floor, because she did not go back
to check the floor.  She did not describe
the condition of the floor, again repeating her answer that all she knew was
that she walked in and fell and did not go back to examine the floor.  Ogueri testified that she was “aware . . .
that students came out later that day and told [her] that there were wet floor
signs up over there for the rest of the day” and that following her accident,
“other students . . . told [her] that the floor was—that the floor was known to be slippery and
that many people had slipped on that floor several times.”  She further testified that it was “drizzling”
on the day of her fall and that “there was supposed to be cameras all over the
school so the school would be aware of what was going on and where and how I
fell.”  When asked if she was aware of
what made the floor where she fell so slippery, Ogueri answered, “I heard the
floor was always very highly polish[ed]—I don’t know what cleaning agent or polishing agent was used on that
floor, but it was slippery most of the time. . . . [T]hat floor was always very
shiny and—it just really looked shiny,
and I guess that makes it slippery.”

In her response to TSU’s plea,
Ogueri stated that TSU did not have to have actual knowledge of the alleged
condition because she was an invitee, rather than a licensee, that TSU used
information it withheld during discovery under a claim of privilege, that the
condition of the floor created an unreasonable risk of harm, and that she was
unaware of the dangerous condition of the floor.  The trial court granted TSU’s plea to the
jurisdiction and dismissed the case with prejudice.  This appeal followed.

Plea to the Jurisdiction

          In
her first, second, third, and fourth issues, Ogueri challenges the trial
court’s grant of TSU’s plea to the jurisdiction.

A.  
Standard of Review

          Whether
a trial court has subject matter jurisdiction is a question of law that this
Court reviews de novo.  Harris Cnty. v. Luna-Prudencio, 294
S.W.3d 690, 695 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  In reviewing a trial court’s ruling on a plea
to the jurisdiction, we do not look to the merits of a case, but consider only
the pleadings and the evidence relevant to the jurisdictional inquiry, and we
construe the pleadings liberally in favor of conferring jurisdiction.  Id. at
695–96.  If a plea to the jurisdiction
challenges the existence of jurisdictional facts, we consider relevant evidence
submitted by the parties when necessary to resolve the jurisdictional issues
raised, as the trial court is required to do. 
Id. at 696 (citing Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226–27 (Tex. 2004)).  When the consideration of a trial court’s
subject matter jurisdiction requires the examination of evidence, the trial
court exercises its discretion in deciding whether the jurisdictional
determination should be made at a preliminary hearing or should await a fuller
development of the case, mindful that this determination must be made as soon
as practicable.  Id.; see also Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000) (“Whether a determination of subject-matter jurisdiction can be
made in a preliminary hearing or should await a fuller development of the
merits of the case must be left largely to the trial court’s sound exercise of
discretion.”).

In a case in which the
jurisdictional challenge implicates the merits of the plaintiff’s cause of
action and the plea to the jurisdiction includes evidence, the trial court
reviews the relevant evidence to determine if a fact issue exists.  Luna-Prudencio,
294 S.W.3d at 696.  If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea
to the jurisdiction, and the fact issue will be resolved by the fact
finder.  Id.  However, if the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional
issue, the trial court rules on the plea to the jurisdiction as a matter of
law.  Id.

Governmental
immunity from suit deprives the trial court of subject matter jurisdiction over
a plaintiff’s claims against a governmental entity.  Id.  In a suit against a governmental unit,
the plaintiff must affirmatively demonstrate the trial court’s jurisdiction by
alleging a valid waiver of immunity.  Id. (citing Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex.
2003)).  The legislature granted a
limited waiver of immunity in the Texas Tort Claims Act (the “TTCA”), which
allows suits to be brought against governmental units in limited
circumstances.  Tex. Dep’t of Crim. Justice v. Miller, 51 S.W.3d 583, 587 (Tex.
2001).

Civil Practice and Remedies Code section
101.021(2) provides that a governmental unit is liable for “personal injury and
death so caused by a condition or use of tangible personal or real property if
the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.”  Tex. Civ. Prac. & Rem. Code Ann. §
101.021(2) (Vernon 2005).  Liability for
a premises defect is implied under section 101.021(2) because a premises defect
arises from a condition existing on real property.  Perez
v. City of Dallas, 180 S.W.3d 906, 910 (Tex. App.—Dallas 2005, no
pet.).  Ogueri, as the plaintiff, is
required to plead facts sufficient to invoke a waiver of immunity under the
TTCA.  Cnty. of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

B.  
Ogueri’s Status as an Invitee or Licensee

In her third issue, Ogueri argues
that she should be regarded as an invitee for purposes of analyzing her
premises defect claim because, as a student at TSU, she paid for the use of the
facilities.[2]  TSU argues that Ogueri was a licensee because
the record shows that she did not pay her spring tuition until January 31,
2007, which was several days after her fall.

          “The
type of duty owed a plaintiff is part of the waiver analysis under the
TTCA.”  City of Irving v. Seppy, 301 S.W.3d 435, 441 (Tex. App.—Dallas
2009, no pet.) (citing Tex. Civ. Prac.
& Rem. Code Ann. § 101.021–.022 (Vernon 2005)).  Section 101.022(a) provides that “[i]f a
claim arises from a premises defect, the governmental unit owes to the claimant
only the duty that a private person owes to a licensee on private property,
unless the claimant pays for the use of the premises.”  Tex.
Civ. Prac. & Rem. Code Ann. § 101.022(a) (Vernon Supp. 2010); Seppy, 301 S.W.3d at 441.  “If the plaintiff pays for the use of the
premises, the governmental unit owes the plaintiff the duty owed to an
invitee.”  Seppy, 301 S.W.3d at 441. 
“The duty owed an invitee ‘requires an owner to use ordinary care to
reduce or eliminate an unreasonable risk of harm created by a premises
condition of which the owner is or reasonably should be aware.’”  Id. (quoting
State Dep’t of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992)).

TSU’s evidence attached to its plea
to the jurisdiction showed that Ogueri was charged law school tuition and other
fees on November 20, 2006, and she was charged a late payment fee on January
17, 2007.  Although Ogueri did not make
an actual payment until January 31, 2007, she was being charged to use the
university premises at the time of her accident.  Thus, we conclude that Ogueri was an invitee
of TSU at the time of the accident, and TSU owed her the duty owed to invitees.  See
Seppy, 301 S.W.3d at 441.

We sustain Ogueri’s third issue.

C.  
Ogueri’s Premises Defect Claim

In her first issue, Ogueri argues
that the trial court erred in granting TSU’s plea to the jurisdiction because
TSU’s governmental immunity was expressly waived by Civil Practice and Remedies
Code section 101.021(2).  In her second
issue, Ogueri argues that the slippery floor was a dangerous condition that
created an unreasonable risk of harm.  In
her fourth issue, Ogueri argues that the trial court erred in granting the plea
because Ogueri was unaware of any dangerous condition, and TSU could have
discovered the slippery condition of the floor through reasonable inspection
and failed in its duty to warn Ogueri.

The TTCA requires Ogueri to plead
that a premises defect arose from a condition of real property and that the
governmental unit would, were it a private person, be liable to Ogueri under
Texas law.  See Tex. Civ. Prac. &
Rem Code Ann. § 101.021(2).  “A
property possessor must not injure a licensee by willful, wanton, or grossly
negligent conduct, and must use ordinary care either to warn a licensee of a
condition that presents an unreasonable risk of harm of which the possessor is
actually aware and the licensee is not, or to make the condition reasonably
safe.”  See Brown, 80 S.W.3d at 554. 
Thus, Ogueri, as an invitee, had to plead jurisdictional facts showing
that: (1) TSU had actual or constructive knowledge of some condition on the
premises; (2) the condition posed an unreasonable risk of harm; (3) TSU did not
exercise reasonable care to reduce or eliminate the risk; and (4) TSU’s failure
to use such care proximately caused her injuries.  See
Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992).

In her fourth issue, Ogueri argues
that TSU could have discovered the slippery condition of the floor through
reasonable inspection.  TSU argued it did
not have actual or constructive knowledge of the dangerous condition because
there was no record of prior incidents or problems relating to the floor
surface in question.

To establish that TSU possessed the
requisite knowledge, Ogueri was required to show either that TSU knew of the
dangerous condition and negligently failed to correct it or that the condition
of the floor existed for so long that TSU should have discovered and corrected
it in the exercise of reasonable care.  See Univ. of Tex. at Austin v. Hayes,
327 S.W.3d 113, 117 (Tex. 2010) (holding that to establish waiver of immunity
for premises-defect claim, plaintiff must show evidence of elements of
premises-defect claim); Keetch, 845
S.W.2d at 264–66.  “Although there is no
one test for determining actual knowledge that a condition presents an
unreasonable risk of harm, courts generally consider whether the premises owner
has received reports of prior injuries or reports of the potential danger
presented by the condition.”  Univ. of Tex.-Pan Am. v. Aguilar, 251
S.W.3d 511, 513 (Tex. 2008) (per curiam). 
Actual knowledge requires knowledge that the dangerous condition existed
at the time of the accident.  City of Corsicana v. Stewart, 249 S.W.3d
412, 414–15 (Tex. 2008) (per curiam).  “[C]onstructive
knowledge can be established by showing that the condition had existed long
enough for the owner or occupier to have discovered it upon reasonable
inspection.”  CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 102–03 (Tex. 2000).  Thus, constructive knowledge can be
established by facts or inferences that a dangerous condition could develop
over time.  Stewart, 249 S.W.3d at 415.

Ogueri alleged in her petition that
the floor was “highly polished,” that the floor was “unusually or extremely
slippery” in nature “even when the floor was dry,” and that it had rained the
morning of her accident.  Ogueri also
alleged that TSU “knew, or reasonably should have known, of the slippery floor,
as other persons had complained of the [floor] prior to the incident involving
[Ogueri], and several months had elapsed when [TSU’s] agents observed the
condition.”  TSU’s plea to the
jurisdiction challenged these jurisdictional facts.  Therefore, the trial court was required to
review the relevant evidence to determine if a fact issue existed, and it could
only grant the plea to the jurisdiction if the relevant evidence failed to
raise a fact question.  See Luna-Prudencio, 294 S.W.3d at 696.

Ogueri’s petition appears to allege
that the floor was unusually slippery or, alternatively, that the floor was
wet.  Although her petition alleges that
TSU had received previous complaints regarding the condition of the floor and
that “several months had elapsed when [TSU’s] agents had observed the
condition,” TSU presented evidence with its plea to the jurisdiction showing
that TSU had no record of any previous complaints, incidents, or service
requests.[3]  

Ogueri failed to present any
jurisdictional evidence challenging these facts.  In her deposition testimony, Ogueri testified
that she did not know what caused her to slip and fall, or whether there was
anything on the floor, because she did not go back to check the floor.  She did not describe the condition of the
floor, again repeating her answer that all she knew was that she walked in and
fell and did not examine the floor. 
Thus, she did not provide any evidence of what condition TSU should have
noticed.[4]  Furthermore, Ogueri testified that other
students told her that TSU placed “wet floor” signs in the area where she fell
following her injury and that other people had slipped in that area
before.  However, Ogueri did not plead or
provide any evidence that the floor was actually wet when she fell.  Nor does she identify these students or
provide any specific evidence of previous incidents.  Thus, Ogueri failed to present any evidence
raising a fact question regarding the jurisdictional issue of TSU’s actual or
constructive knowledge of the allegedly dangerous condition.  See Keetch,
845 S.W.2d at 264 (providing elements of premises liability claim); Luna-Prudencio, 294 S.W.3d at 696
(providing that if jurisdictional challenge implicates merits of plaintiff’s
cause of action and includes evidence, trial court must review evidence to
determine if fact issue exists); see also
Bland Indep. Sch. Dist., 34 S.W.3d at 554 (holding that it falls within
trial court’s discretion to determine whether ruling on subject-matter
jurisdiction can be made in preliminary hearing or should wait fuller
development of merits).

Because Ogueri failed to present
evidence raising a fact question regarding this element of her premises
liability claim, she failed to present a claim that TSU, as a governmental
unit, would be liable to Ogueri were it a private person.[5]  See Tex. Civ. Prac. & Rem. Code Ann. §
101.021(2).  Thus, the evidence fails to
raise a fact question on the jurisdictional issue, and the trial court properly
ruled on the plea to the jurisdiction as a matter of law.  See
Luna-Prudencio, 294 S.W.3d at 696.

We overrule Ogueri’s fourth issue.

Because we conclude that the trial
court correctly granted TSU’s plea to the jurisdiction on the ground discussed
above, we do not address Ogueri’s remaining issues complaining of the trial
court’s ruling on the plea to the jurisdiction.[6]

Admissibility of Affidavits

In her fifth issue, Ogueri
complains that the trial court erred in considering TSU’s affidavits from Walker,
Harrison, and Rychlec because the affidavits contained information TSU withheld
from Ogueri under a claim of privilege.

A party waives its complaint
regarding inadmissible evidence if it fails to object to the affidavit
containing the allegedly inadmissible evidence. 
See Einhorn v. LaChance, 823
S.W.2d 405, 410 (Tex. App.—Houston [1st Dist.] 1992, writ dism’d w.o.j.); see also Rockwall Commons Assocs. v. MCR
Mortg. Grantor Trust I, No. 08-09-00030-CV, 2010 WL 5387598, at *5 (Tex.
App.—El Paso Dec. 29, 2010, no pet.) (holding that objections to form of
affidavit include “(1) lack of personal knowledge; (2) hearsay; (3) statement
of an interested witness that is not clear, positive, direct, or free from
contradiction; and (4) competence”); Brown
v. Brown, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied) (holding
that defects in form of affidavit must be objected to in trial court and
opposing party must have opportunity to amend and that failure to obtain ruling
on objection to form of affidavit waives objection).

Here, Ogueri complained in her
response that TSU’s affidavits contained information that it withheld during
discovery under a claim of privilege.  However,
Ogueri did not file an objection with the trial court, and the trial court did
not rule on Ogueri’s complaints. 
Therefore, this complaint is waived. 
See Einhorn, 823 S.W.2d at
410; Brown, 145 S.W.3d at 751.

Conclusion

          We affirm
the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.











[1]           See
Tex. Civ. Prac. & Rem Code Ann.
§§ 101.001–.109 (Vernon 2005 & Supp. 2010) (also known as the Texas Tort
Claims Act (“TTCA”)).





[2]
          Ogueri attached documents to her
brief demonstrating that she had made payments to TSU prior to January 2007;
however, these documents were not part of the official clerk’s record.  “We cannot consider documents attached to an
appellate brief that do not appear in the record.  This Court must hear and determine a case on
the record as filed, and may not consider documents attached as exhibits to
briefs.”  Till v. Thomas, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.]
1999, no pet.).





[3]           Ogueri also complains in her fifth
issue that the trial court erred in considering the evidence presented in the
affidavits attached to TSU’s plea to the jurisdiction.  We address this complaint below.

 





[4]
          This lack of evidence also
implicates the element requiring that the condition posed an unreasonable risk
of harm.  “A condition poses an
unreasonable risk of harm for premises-defect purposes when there is a
‘sufficient probability of a harmful event occurring that a reasonably prudent
person would have foreseen it or some similar event as likely to happen.’”  Cnty.
of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002) (quoting Seideneck v. 
Cal Bayreuther Assocs., 451 S.W.2d 752, 754 (Tex. 1970)); see also Rosas v. Buddies Food Store,
518 S.W.2d 534, 537 (Tex. 1975) (“Whether a condition constitutes a danger is a
function of reasonableness.  That is, if
the ordinarily prudent man could foresee that harm was a likely result of a
condition, then it is a danger.”).  The mere fact that Ogueri slipped does
not, by itself, prove that the condition of the floor posed a foreseeable,
unreasonable risk of harm.  See Eubanks v. Pappas Rests., Inc., 212
S.W.3d 838, 841 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that
when plaintiff offered no evidence that “anything other than nature was
involved in the occurrence of the slime or slimy mud” on which he slipped,
plaintiff failed to show existence of unreasonable risk of harm, and holding
that conclusory statements in affidavit and deposition that substance was result
of landscaping crew’s negligence in cleaning up area were not sufficient); see also M.O. Dental Lab v. Rape, 139
S.W.3d 671, 675–76 (Tex. 2004) (holding that conditions that present risks are
not necessarily unreasonably dangerous). 
Here, Ogueri failed to present evidence of any accumulation of water on
the floor or of any specific dangerous condition of the floor beyond her
pleadings and deposition testimony that the floor was “highly polished” and
that “that floor was always very shiny and—it just really
looked shiny, and I guess that makes it slippery.”  These conclusory statements do not establish
the existence of an unreasonable risk of harm. 
See Eubanks, 212 S.W.3d at 841; M.O. Dental Lab, 139 S.W.3d at 675–76.





[5]
          Ogueri argues in her brief that
she should not be required to prove her entire case to overcome an objection to
the subject matter jurisdiction of the trial court.  However, where a jurisdictional challenge
implicates the merits of a case and includes evidence, it is proper for the
trial court to consider the evidence raised and grant the plea to the
jurisdiction if the evidence is undisputed or fails to raise a fact
question.  See Harris Cnty. v. Luna-Prudencio, 294 S.W.3d 690, 696 (Tex.
App.—Houston [1st Dist.] 2009, no pet.) (citing Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
226–28 (Tex. 2004)).  Furthermore,
“[w]hether a determination of subject-matter jurisdiction can be made in a
preliminary hearing or should await a fuller development of the merits of the
case must be left largely to the trial court’s sound exercise of
discretion.”  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  Ogueri’s cursory argument on this
issue does not provide a basis for this Court to determine that the trial court
abused its discretion in ruling on TSU’s plea to the jurisdiction when it did.

 





[6]
          We also note that Ogueri did not
ask for the opportunity to replead her cause of action in the trial court or on
appeal, and, thus, we do consider whether the trial court should have allowed
Ogueri the opportunity to amend her pleadings. 
See Tara Partners, Ltd. v. City of
S. Houston, 282 S.W.3d 564, 570 (Tex. App—Houston [14th Dist.] 2009, pet. denied) (“[T]hrough
inaction, a plaintiff may lose the opportunity to amend.”); Haddix v. Am. Zurich Ins. Co., 253
S.W.3d 339, 347 (Tex. App.—Eastland 2008, no pet.) (“While the general rule
expresses a preference for allowing an amendment, a plaintiff can waive this
opportunity through inaction.”) (citing Kassen
v. Hatley, 887 S.W.2d 4, 13–14 n.10 (Tex. 1994) (holding plaintiffs waived
any complaint when they failed to object or request opportunity to amend their
petition following trial court’s ruling on motion for summary judgment
attacking plaintiff’s pleadings regarding sovereign immunity)); see also Miranda, 133 S.W.3d at 226–27
(“If the pleadings do not contain sufficient facts to affirmatively demonstrate
the trial court[’]s jurisdiction but do not affirmatively demonstrate incurable
defects in jurisdiction, the issue is one of pleading sufficiency and the
plaintiffs should be afforded the opportunity to amend.  If the pleadings affirmatively negate the
existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing the plaintiffs an opportunity to amend.”).