TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00011-CV






Texas Department of Transportation, Appellant


v.


Larry Hathorn, Individually and as Representative of the Estate of Debra Picha, Appellee






FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY

NO. C-1-PB-08-088294, HONORABLE NIKKI DESHAZO, JUDGE PRESIDING (1)






M E M O R A N D U M O P I N I O N



 The Texas Department of Transportation (TxDOT) brings this accelerated appeal
from an order denying a motion for summary judgment in which TxDOT asserted its sovereign
immunity from suit. Because we conclude that the premise-defect and special-defect liability
theories alleged by Hathorn implicate discretionary decisions regarding highway design for which
TxDOT retains sovereign immunity, we reverse the probate court's order denying summary
judgment and render judgment in favor of TxDOT.



BACKGROUND



 Larry Hathorn, Individually and as Representative of the Estate of Debra Picha,
intervened in a product liability, wrongful death and survival suit filed by the families of
Susan Blount and Patricia Metheny after a tragic accident on Highway 71 in Austin in which Blount,
Metheny, and Picha were killed. (2) During a heavy rainstorm, Blount lost control of her Nissan
Murano SUV. The SUV hydroplaned and struck the rear of a parked dump truck. Hathorn and the
Blount and Metheny families (collectively "Claimants") attributed the collision in part to an
excessive accumulation of water on the roadway.

 Claimants initially sued a number of Nissan entities and Osuna Trucking, Inc.
Claimants subsequently amended their pleadings to bring negligence claims against Capital
Excavation Company (Capital), Malone-Wheeler, Inc., R.A. Miller, P.E., and Asphalt Paving
Company of Austin, Inc. The amended pleadings also asserted premise-defect claims against
TxDOT. Claimants' fifth amended petition--the live pleading against all the construction
defendants, the trucking company, and TxDOT at the time of the summary-judgment
hearing--alleged that TxDOT retained Capital before the collision to perform a "notch-and-widen"
project on Highway 71 in which older asphalt and new asphalt were joined and that "the design
and/or construction adversely altered water drainage." They further alleged that numerous accidents
occurred at the same location and that TxDOT subsequently eliminated the roadway defect through
pavement "milling," "leveling-up," and the application of porous friction course (PFC) asphalt, a
"special asphalt that dramatically reduces wet weather hydroplane accidents." As to TxDOT, which
would have sovereign immunity for its discretionary highway design decisions, see Texas Dep't of
Transp. v. Ramirez, 74 S.W.3d 864, 865 (Tex. 2002) (per curiam), Claimants alleged that their
suit falls within an exception to immunity because the highway project "resulted in a special defect
or alternatively, a premise defect on the surface of Highway 71 allowing for excessive accumulation
of water."

 The summary-judgment evidence shows that TxDOT's notch-and-widen project
involved the addition of a left-turn lane and paved shoulders on Highway 71 at Bee Creek Road,
along with the addition of a left-turn lane to access a private subdivision. The project initially had
two designers--with TxDOT designing the portion west of the location where the accident made
the basis of this suit occurred and Malone-Wheeler designing the other portion for the developer of
the subdivision--but TxDOT subsequently incorporated both designs into the project's overall
construction plans. TxDOT engineer Benjamin P. Ramirez was responsible for overseeing and
verifying TxDOT's design and for reviewing, commenting, and incorporating Malone-Wheeler's
design into the overall design of the job.

 One aspect of the project's design involved the construction of the roadway's "cross
slope," an angle designed into a roadway and expressed in percentages, that allows for drainage and
provides comfort to motorists while driving through roadway curves. Plans for this notch-and-widen
project identified specific cross-slope values to be built into the road at certain points. The plans also
acknowledged that the cross slope of the existing roadway varied. A question arose before paving
about whether to use the cross-slope values set forth in the plans or to match the cross slope of the
new pavement to the existing roadway.

 TxDOT inspector Kenneth Brewer called Ramirez to report Capital's finding, based
on a spot check of a few locations on the roadway, that the cross-slope percentages at some locations
did not match the cross-slope values indicated in the plans for those locations. (3) Ramirez responded
by telling Brewer to instruct Capital to build the road's cross slopes in accordance with the plans.
Ramirez testified that, when giving that instruction, he expected that the cross slopes would be
built within the plan's tolerances. Capital's field engineer, David Womack, testified that Ramirez's
instruction did not give him any concern, that he recalled other TxDOT widening projects in which
roads were built with different cross slopes from the existing pavement, and that he did not believe
following the cross slope in the plans would create a hazard or danger on the roadway.

 In response to Hathorn's lawsuit arising from the accident, TxDOT filed traditional
and no-evidence motions for summary judgment, contending that it retained sovereign immunity
because Hathorn's suit implicated TxDOT's discretionary decisions about roadway design. (4) See
Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 2011) (discretionary-function exception);
Tex. R. Civ. P. 166(a), (b), (i). Hathorn responded that his suit against TxDOT did not "exclusively
contend" that the design of the roadway was the proximate cause of his injuries but also sought to
impose liability on TxDOT for "construction defects--acts taken in the implementation of previously
made policy choices," constituting either special or premise defects under the limited waiver of
immunity in the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001-.109
(West 2011 & Supp. 2011). The probate court heard and denied TxDOT's summary judgment.
TxDOT now appeals that order. (5)



ANALYSIS



Sovereign immunity and the Texas Tort Claims Act

 This appeal turns on whether TxDOT retains sovereign immunity for the acts and/or
conditions of which Hathorn complains. The State of Texas generally retains sovereign immunity
from suit and can be sued only if the Legislature waives immunity in clear and unambiguous
language. University of Tex. at Austin v. Hayes, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam)
(citing Tex. Gov't Code Ann. § 311.034 (West Supp. 2011); Texas Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004)). Sovereign immunity, i.e., the State's immunity from
suit and liability, applies in certain instances to the State and its subdivisions, including TxDOT. 
See Rolling Plains Groundwater Conservation Dist. v. City of Aspermont, 353 S.W.3d 756, 759 n.4
(Tex. 2011); State v. Lueck, 290 S.W.3d 876, 880 (Tex. 2009); see also Tex. Civ. Prac. & Rem.
Code Ann. § 101.001(3)(A) (defining "governmental unit").

 The law is clear that TxDOT retains sovereign immunity for discretionary acts of
roadway design. Ramirez, 74 S.W.3d at 866-67; State v. Miguel, 2 S.W.3d 249, 251 (Tex. 1999);
State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999); see Stephen F. Austin State Univ. v. Flynn,
228 S.W.3d 653, 657 (Tex. 2007) (noting that sovereign immunity is not waived for claim based on
governmental unit's discretionary decision). Section 101.056 of the civil practice and remedies code
codifies the retention of immunity for a claim based on:


(1) the failure of a governmental unit to perform an act that the unit is not required
by law to perform; or


(2) a governmental unit's decision not to perform an act or on its failure to make a
decision on the performance or nonperformance of an act if the law leaves the
performance or nonperformance of the act to the discretion of the governmental
unit.



Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (providing discretionary-function exception). The
Texas Supreme Court defines an act as discretionary "if it requires exercising judgment and the
law does not mandate performing the act with such precision that nothing is left to discretion or
judgment." Rodriguez, 985 S.W.2d at 85. Whether a governmental act is discretionary is a question
of law. Miguel, 2 S.W.3d at 251.

 Accordingly, to the extent that Hathorn's claims against TxDOT implicate solely
discretionary acts of roadway design, TxDOT is entitled to immunity. Hathorn asserts that his claims
do not solely implicate discretionary acts of roadway design, but rather that his claims fall within the
limited waiver of sovereign immunity set forth in the Texas Tort Claims Act for claims arising from
premise defects or special defects. See Hayes, 327 S.W.3d at 115-16 (citing Tex. Civ. Prac. & Rem.
Code Ann. § 101.022(a), (b)). If the condition at issue is a premise defect or a special defect, it is
specifically governed by section 101.022 of the Tort Claims Act. Miranda, 133 S.W.3d at 233; State
v. Tennison, 509 S.W.2d 560, 562 (Tex. 1974). Texas law has drawn a distinction between premise
defects or special defects and conditions resulting directly from discretionary design decisions, and
claimants may not use creative pleading to recast an act of discretionary roadway design as a premise
defect or special defect claim under section 101.022. See Ramirez, 74 S.W.3d at 866-67 (rejecting
pleading that highway's slope and lack of barriers were premise defects and holding that median's
slope and lack of barriers reflected discretionary decisions); Rodriguez, 985 S.W.2d at 85 (rejecting
pleading of detour as special defect and holding that detour's location and design resulted from State
engineer office's discretionary judgment); see also Texas Parks & Wildlife Dep't v. Sawyer Trust,
354 S.W.3d 384, 392 (Tex. 2011) (noting that creative pleading cannot be used to effect waiver of
sovereign immunity).


TxDOT's motion for summary judgment

 In its sole issue, TxDOT contends that it was entitled to summary judgment because
Hathorn's claims arose from TxDOT's discretionary roadway design decisions, the claims did not
fall within the Texas Tort Claims Act's limited waiver of sovereign immunity for premise and
special defects, and thus, the probate court lacked jurisdiction over Hathorn's claims. Hathorn
counters that the probate court correctly denied summary judgment because "the claims against
TxDOT are based upon non-design defects that made the roadway unreasonably dangerous." Even
so, Hathorn acknowledges that "if the defect is created solely by an improper design, then the defect
is a result of a discretionary act and the [S]tate retains immunity from suit."

 Usually, when a party moves for traditional and no-evidence summary judgment,
we first review the trial court's judgment under the no-evidence standard. See Ford Motor Co.
v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004); see also Tex. R. Civ. P. 166(a)(i). In this case, we
address the probate court's ruling on the traditional summary judgment first because it is dispositive.
See Poag v. Flories, 317 S.W.3d 820, 825 (Tex. App.--Fort Worth 2010, pet. denied); see also
Tex. R. App. P. 47.1 (requiring "written opinion that is as brief as practicable," addressing all issues
that are raised and necessary to final disposition).

 We review the trial court's ruling on a summary judgment de novo. Mann Frankfort
Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009) (citing Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003)). We consider the summary-judgment
evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Id.;
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 208 (Tex. 2002).

 When a governmental unit raises the affirmative defense of sovereign immunity in
a traditional summary-judgment motion, it must establish the affirmative defense as a matter of law.
See Tex. R. Civ. P. 166a(c); see Thompson v. City of Corsicana Hous. Auth., 57 S.W.3d 547, 552
(Tex. App.--Waco 2001, no pet.). Once the movant conclusively establishes its entitlement to an
affirmative defense of statutory immunity, the burden of production shifts to the nonmovant to
present evidence sufficient to create a fact issue on at least one element of either the movant's
affirmative defense or an exception to that affirmative defense. See Zeifman v. Nowlin, 322 S.W.3d
804, 808 (Tex. App.--Austin 2010, no pet.); Palmer v. Enserch Corp., 728 S.W.2d 431,
435 (Tex. App.--Austin 1987, writ ref'd n.r.e.) (citing"Moore" Burger, Inc. v. Phillips Petroleum
Co., 492 S.W.2d 934, 936 (Tex. 1973)). Summary judgment is proper when a suit is barred as
a matter of law because of a governmental unit's immunity. Shives v. State, 743 S.W.2d 714, 715
(Tex. App.--El Paso 1987, writ denied) ("A motion for summary judgment may be based on a
showing that the cause of action is barred as a matter of law by the affirmative defense of
governmental immunity."); see Garza v. Cruz, No. 04-04-00339, 2005 Tex. App. LEXIS 1758,
at *8-9 (Tex. App.--San Antonio Mar. 9, 2005, no pet.) (mem. op.) (reversing denial of summary
judgment and rendering judgment in favor of Texas Department of Public Safety because its
evidence conclusively established that it retained sovereign immunity from claimants' suit and
response failed to raise issue of material fact).

 TxDOT thus bore the burden on its traditional motion for summary judgment to
establish as a matter of law that Hathorn's claims were barred by sovereign immunity, in this
instance because the claims were based on TxDOT's discretionary decisions about the design of the
roadway. In support of its motion, TxDOT drew heavily from the testimony and reports of Hathorn's
experts and the supreme court's precedent in Ramirez. The entirety of TxDOT's summary-judgment
evidence before the probate court was uncontroverted.


Hathorn's response

 Hathorn's response argued that, while TxDOT retains sovereign immunity for acts of
policy formulation, it waives immunity for negligent policy implementation. See Flynn, 228 S.W.3d
at 657. Whether a governmental unit's complained-of action involves policy "formulation" or
"implementation" is a question of law. Id. (citing Rodriguez, 985 S.W.2d at 85). Hathorn asserts
that there is "ample summary judgment evidence that defects were created by improper
implementation of the design of the roadway." However, his response to TxDOT's motion for
traditional summary judgment provided only legal argument to the effect that his theories sound in
negligent implementation, but do not present additional summary-judgment evidence. See Madeksho
v. Abraham, Watkins, Nichols & Friend, 57 S.W.3d 448, 455 (Tex. App.--Houston [14th Dist.]
2001, pet. denied) (noting that "conclusory argument" in response to motion for summary judgment
is not summary-judgment evidence). Hathorn's response consists entirely of argument and offers no
different view of the summary-judgment evidence derived from his own experts.

 His response further argues that his claims against TxDOT "sound in its
implementation of policy" in the actual construction of the highway and that his pleadings
demonstrate his attempt to recover "for the negligence manifest in the construction defects that
made the roadway unreasonably dangerous." But see Laidlaw Waste Sys., Inc. v. City of Wilmer,
904 S.W.2d 656, 660 (Tex. 1995) (concluding that pleadings, unlike these, that are sworn or verified
are usually not summary-judgment evidence); Zeifman, 322 S.W.3d at 804 (claimant could not
rely on his pleadings to assert that he met his burden of producing evidence to create fact issue
on defendant's entitlement to statutory immunity). Even if Hathorn's pleadings were summary-judgment evidence, Hathorn's petition never refers to negligent implementation of any policy; he
pleads only special-defect and premise-defect theories against TxDOT, which are immaterial if the
conditions of which he complains implicate the discretionary-function exception. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.056; Ramirez, 74 S.W.3d at 867 (rejecting premise-defect claim that
was based on discretionary decisions about highway median's slope and lack of barriers); Perez
v. City of Dallas, 180 S.W.3d 906, 911 (Tex. App.--Dallas 2005, no pet.) (noting that discretionary
decision regarding design of trash disposal pit located on municipal premises could not provide basis
for waiver of sovereign immunity).

 Although Hathorn did not refer to any summary-judgment evidence supporting a
negligent-implementation theory of liability against TxDOT, summary judgments must stand on their
own merits, and Hathorn's deficient response does not supply by default the summary-judgment
proof necessary to establish TxDOT's right. See City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979). As such, we proceed to determine whether TxDOT conclusively
established its sovereign immunity from Hathorn's suit as a matter of law under the discretionary-function exception. See id. at 679; see also Tex. Civ. Prac. & Rem. Code Ann. § 101.056.


Flynn's discretionary-determination standards

 Although Hathorn's response denies that TxDOT's conduct implicates a discretionary
function, he does admit that at least some aspect of his suit against TxDOT necessarily presents a
roadway-design complaint, arguing that he "do[es] not exclusively contend that the design of the
roadway is the proximate cause of [his] injuries."

 Since its ruling on the discretionary-function exception in Ramirez, the supreme court
in Flynn recognized at least two tests for deciding whether the governmental unit's complained-of
action "involves a protected 'discretionary' determination." Flynn, 228 S.W.3d at 657. The first test
distinguishes between decisions generated by the governmental unit at the policy level and those
generated at the operational level. Id. Under this test, a court ruled that the decision to release
water from a spillway constituted "policy formulation" for which the water district was immune,
but the subordinate decision of determining the volume of the outflow was "policy implementation"
for which it was not immune. Id. (citing Bennett v. Tarrant Cnty. Water Control & Improvement
Dist. No. 1, 894 S.W.2d 441, 452 (Tex. App.--Fort Worth 1995, writ denied)). The second test
distinguishes between the design of public works, for which there is immunity, and their
maintenance, for which there is not. Id. Under this test, for example, the governmental unit retains
immunity for designing a bridge without lighting, but may be liable for failing to maintain the
lighting on a bridge that is designed to be illuminated. Id. at 657-58 (comparing holdings in Tarrant
County Water Control v. Crossland, 781 S.W.2d 427, 433 (Tex. App.--Fort Worth 1989,
writ denied) and County of Cameron v. Brown, 80 S.W.3d 549, 558 (Tex. 2002)).

 Operational- or maintenance-level decisions are those involved in "carrying out"
a policy, consisting of ministerial acts that require obedience to orders. See City of Lancaster
v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994); State v. Terrell, 588 S.W.2d 784, 787-88
(Tex. 1979); see also Stanford v. State Dep't of Highways & Pub. Transp., 635 S.W.2d 581, 582
(Tex. App.--Dallas 1982, writ ref'd n.r.e.) (concluding that "maintenance" of structure is that
which is required to preserve structure as it was originally designed and constructed). For instance,
a TxDOT flagman at a construction or maintenance site is implementing, at the operational level,
a previously made policy decision about how to control and protect traffic in and around its road
construction and maintenance sites. McClure v. Reed, 997 S.W.2d 753, 756 (Tex. App.--Tyler
1999, no pet.) (citing Mitchell v. City of Dallas, 855 S.W.2d 741, 749 (Tex. App.--Dallas 1993),
aff'd, 870 S.W.2d 21 (Tex. 1994)); see City of Irving v. Seppy, 301 S.W.3d 435, 442
(Tex. App.--Dallas 2009, no pet.) (distinguishing claimants' allegations of negligent maintenance
and repair of structure, for which city was not immune, from claimants' allegation of negligence in
"failing to properly design and/or build" structure).


 By contrast, policy decisions are those taken at the planning level, see Mitchell,
855 S.W.2d at 745, which constitute "the execution of or the actual making of those policy
decisions." Terrell, 588 S.W.2d at 788. As previously noted, the Texas Supreme Court has held
that the "design of any public work, such as a roadway, is a discretionary function involving many
policy decisions." Ramirez, 74 S.W.3d at 867 (quoting Rodriguez, 985 S.W.2d at 85). The court
has further held that the governmental entity responsible for the discretionary decisions about the
design of a roadway "may not be sued for such decisions." Id.; Maxwell, 880 S.W.2d at 464 (noting
that when TxDOT utilizes engineering expertise and discretion in highway planning and design, the
act remains in the agency's informed discretion and exempt from liability under section 101.056);
see also University of Tex. v. Amezquita, No. 03-06-00606-CV, 2009 Tex. App. LEXIS 3872, at *5
(Tex. App.--Austin June 4, 2009, no pet.) (mem. op.) ("Plans formulated by state engineers are
paradigmatic discretionary decisions immune from suit.").


Summary-judgment evidence

 TxDOT's motion for summary judgment contends that, regardless of how the
complaints are recast, Hathorn's pleadings and summary-judgment evidence--a great deal of which
came from Hathorn's own experts--show that the alleged defective condition of the roadway stems
from disagreement with decisions of the TxDOT engineer who was ultimately in charge of
the roadway's design. Those design decisions included choices about paving material, which survey
to use, the design of the shoulder's slope, and acceptance of the project as being in substantial
compliance with plans. But the core disagreement is with the TxDOT engineer's decision to rely
on the plans and his direction to Capital to rely on the plans rather than diverting from the design
to account for the few locations with different cross slopes noted in a random spot-check. Witness
testimony about the differing cross slopes on other TxDOT projects and the plans
themselves--which contained set values for the new pavement's cross slopes and acknowledged
varying cross slopes of existing pavement--indicate that some tolerance for cross-slope difference
was part of the roadway's design, not independent of it. (6)

 Hathorn's experts devoted considerable attention to issues of TxDOT's roadway
design. For example, Don L. Ivey questioned the "original design of this highway" which, although
in compliance with policies of the American Association of State Highway and Transportation
Officials, "could have been designed" with a different percentage of superelevation for the cross
slope. A report from another of Hathorn's experts, James Scherocman, noted the potential for cross-slope differential in the plans themselves, because the plan sheet indicated that the cross slope of the
existing roadway varied but the same plan sheet provided for a standard cross section on the new,
outside portion of the roadway. Yet another of Hathorn's experts, John C. Glennon, testified about
various actions that TxDOT should have taken from the design planning for the project to final
acceptance of the roadway, but he ultimately acknowledged that all of those actions were design
decisions and there was considerable discretion within the parameters of what would have allowed
for good pavement drainage. (7)
 Hathorn also put forth expert opinion from Raymond G. Helmer,
who faulted the TxDOT engineer's cross-slope design decision--independent of any subsequent
construction--as a probable source of the complained-of "groove," "crease," or "trough" in the
pavement that led to the accumulation of water. He further concluded that if only TxDOT had
responded or decided differently about using the cross-slope design set forth in the plans, the traffic
accident made the basis of this suit might have been avoided.

 The liability theory presented in this summary-judgment evidence makes a causal
link between the TxDOT engineer's decisions about the design of the highway's cross slope, the
complained-of pavement conditions, and the subject collision. That theory is based entirely on
TxDOT's roadway design. Even taking the evidence in the light most favorable to Hathorn, the non-movant, it is clear that the negligence alleged by Hathorn arose not from faulty implementation of the
plans, but from TxDOT's policy decision about the roadway's design. Cf. Texas Dep't of Transp.
v. Olivares, 316 S.W.3d 89, 105 (Tex. App.--Houston [14th Dist.] 2010, no pet.) (noting that it was
"unclear" whether tollway's "minimal road shoulders" resulted from negligent implementation or
formulation of policy).

 Further, the TxDOT engineer's cross-slope decision for this project is different from
the operational-level decisions at issue in the cases Hathorn cites--settings of water sprinklers,
maintenance of bleachers, jailers' decisions to prioritize booking inmates over doing cell checks,
driving decisions by a highway patrol officer in pursuit of a speeding vehicle, and upkeep or building
of a wired-rock wall. See Flynn, 228 S.W.3d at 658; City of Brownsville v. Alvarado, 897 S.W.2d
750, 755 (Tex. 1995); Terrell, 588 S.W.2d at 788; University of Tex. at San Antonio v. Trevino,
153 S.W.3d 58, 63 (Tex. App.--San Antonio 2002, no pet.); Mitchell, 855 S.W.2d at 745 (noting
conflict of authority on whether construction activities are characterized as immune). Rather, the
cross-slope decision here is precisely the type of highway-design, policy-level decision to which
courts apply the discretionary-function exception. See Ramirez, 74 S.W.3d at 867; Rodriguez,
985 S.W.2d at 85; Van Gelder, 304 S.W.3d at 454; Maxwell, 880 S.W.2d at 463, 464. (8)

TxDOT v. Ramirez precedent

 TxDOT's motion also argued that Hathorn's allegations are akin to the allegations
about a road's slope and safety features that the supreme court rejected as being discretionary
decisions for which TxDOT retained immunity in Ramirez. See 74 S.W.3d at 867; see also Tex. Civ.
Prac. & Rem. Code Ann. § 101.056 (providing discretionary-function exception to Texas Tort
Claims Act's waiver of immunity). The claimant in Ramirez alleged that her husband's fatal
collision was the result of TxDOT's failure to correct or warn of a dangerous highway condition that
allowed a car to cross a median and hit her husband's car. Ramirez, 74 S.W.3d at 865. To support
her suit, the claimant alleged that the highway's condition was "dangerous," that there had been
numerous prior collisions involving vehicles crossing the median at that location, that the defect was
the "slope of the northbound lanes in relation to the southbound lanes and slope of the grassy
median," and that TxDOT failed to install safety features. Id. at 866. The claimant also offered her
expert's conclusion that TxDOT "could have remedied the dangerous condition" by installing
barriers or guardrails or "by flattening the median's slope." Id. at 867.

 Relying on its prior holding in State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999),
the supreme court noted that the "design of any public work, such as a roadway, is a discretionary
function involving many policy decisions, and the governmental entity responsible may not be
sued for such decisions." Ramirez, 74 S.W.3d at 867 (quoting Rodriguez, 985 S.W.2d at 85). The
court also noted, based on its holding in State v. Miguel, 2 S.W.3d 249, 251 (Tex. 1999), that
a governmental entity's decisions about the installation of safety features, such as warning signs,
"are discretionary decisions for which it may not be sued." Id.; Miguel, 2 S.W.3d at 251; Maxwell
v. Texas Dep't of Transp., 880 S.W.2d 461, 463 (Tex. App.--Austin 1994, writ denied); see also
Tex. Civ. Prac. & Rem. Code Ann. § 101.056. Given these precedents, the court concluded that "the
median's slope and lack of safety features . . . reflect[ed] discretionary decisions for which TxDOT
retain[ed] immunity under the Act's discretionary-function exception. Thus, [the claimant]'s petition
d[id] not state a premise-defect claim under the Act." Id. (citations omitted); see also Brazoria Cnty.
v. Van Gelder, 304 S.W.3d 447, 454 (Tex. App.--Houston [14th Dist.] 2009, pet. denied)
(concluding that even if pavement sloped at steep or abrupt angle, roadway's design reflected
discretionary act for which governmental unit retained immunity); Berry v. City of Reno, 107 S.W.3d
128, 132-33 (Tex. App.--Fort Worth 2003, no pet.) (holding that section 101.056(2) of civil practice
and remedies code barred plaintiffs' suit based on allegedly negligent "design and construction" of
roadway's drainage system); Maxwell, 880 S.W.2d at 464 (recognizing that although TxDOT relied
on engineering expertise and discretion in planning and design of culvert, such action "remain[ed]
in the informed discretion of the agency and exempt from liability under section 101.056(2)").

 Here, as in Ramirez, all of Hathorn's complaints against TxDOT for a premise
or special defect concern the highway's allegedly improper design. The uncontroverted summary-judgment evidence shows that the complained-of cross slope was itself sufficient to create the
complained-of "groove," "crease," or "trough" in the pavement--independent of any subsequent
construction--which Hathorn alleges to have caused the accident. TxDOT retains sovereign
immunity from suit for these discretionary decisions about highway design. Ramirez, 74 S.W.3d
at 867; see Tex. Civ. Prac. & Rem. Code Ann. § 101.056.

 Based on the uncontroverted summary-judgment evidence, we hold that TxDOT
conclusively established its sovereign immunity from Hathorn's suit as a matter of law under the
discretionary-function exception and that there was no evidence presenting a genuine issue of
material fact to refute TxDOT's sovereign-immunity defense. Accordingly, the probate court erred
in denying TxDOT's traditional motion for summary judgment.



CONCLUSION


 Having sustained TxDOT's sole issue, we reverse the probate court's order denying
TxDOT's motion for summary judgment, conclude that TxDOT has sovereign immunity for
Hathorn's claims, and render judgment in favor of TxDOT.



 
 Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: July 19, 2012

1. Judge Nikki DeShazo presided as the visiting judge.
2. The plaintiffs in the suit were Larry Blount, Individually, and as Representative of the
Estate of Susan Blount, Deceased; Garrett Blount; Rachel Blount; Mary Jo Bolfing; John R.
Matheny, Individually, and as Representative of the Estate of Patricia Matheny, Deceased;
Molly Matheny; Collin Matheny; Arthur Pianta; and Florence Pianta.
3. The cross-slope measurements taken almost two years after the subject collision--and after
the alleged roadway defect was "eliminated"--showed variations in the cross slope on Highway 71.
However, nothing in this record quantifies the percentage difference in the cross slope that
Capital noted at the site for the spot-checked locations. Not all of the spot-checked locations showed
variations in the cross slope.
4. The Blount and Metheny families settled their claims against all defendants. Hathorn
settled with Asphalt Paving, R.A. Miller, Malone-Wheeler, and TxDOT engineer Benjamin P.
Ramirez. TxDOT and Capital are the only defendants remaining in Hathorn's suit, and only TxDOT
is a party to this appeal.
5. An order denying a motion for summary judgment is usually not appealable. Baker
Hughes, Inc., v. Keco R.&D., Inc., 12 S.W.3d 1, 5 (Tex. 1999). However, because TxDOT's
motion for summary judgment challenged the probate court's jurisdiction based on an assertion
of sovereign immunity, we have jurisdiction to review the order denying that motion. See Thomas
v. Long, 207 S.W.3d 334, 338 (Tex. 2006) (recognizing that "Legislature provided for an
interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter
jurisdiction, irrespective of the procedural vehicle used"); see also Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(8) (West Supp. 2011).
6. Capital's field engineer David Womack testified that he did not believe putting in the cross
slopes called for in the plans would create a hazard or danger on the roadway, and that other TxDOT
projects were built with cross slopes differing from the existing pavement.
7. Glennon's testimony also accords generally with the authority vested in the State's engineer
under TxDOT's "Standard Specifications for Construction and Maintenance of Highways, Streets,
and Bridges," which Hathorn provided in his summary-judgment response. The Specifications
include provisions that the "Engineer acts as a referee in all questions arising under the terms of the
Contract," the "Engineer's decisions will be final and binding," the "Engineer reserves the right to
make changes in the work, including addition, reduction, or elimination of quantities and alterations
needed to complete the Contract," and the engineer may determine the limits of whether work is
performed in "reasonably close conformity" with the requirements of the Contract.


8. The concurring justices in Flynn questioned the utility of the operational/maintenance-level
or policy-level classifications in determining whether certain decisions are discretionary under the
Texas Tort Claims Act. Stephen F. Austin State Univ. v. Flynn, 228 S.W.3d 653, 661-62 (Tex. 2007)
(Hecht, J., concurring). They stated that determination of whether decisions are discretionary and
entitled to immunity under the Texas Tort Claims Act should be guided by factors considered in the
discretionary-function exception to the Federal Tort Claims Act, which covers only "decisions
grounded in social, economic, and political policy," or more succinctly, "decisions that represent a
'policy judgment.'" Id. at 662 (citing United States v. Gaubert, 499 U.S. 315, 323 (1991); id. at 335
(Scalia, J., concurring)). Application of the federal factors strengthens the conclusion that a TxDOT
engineer's decision to follow cross-slope values in plans is discretionary and immune from suit. The
Texas Supreme Court has long recognized the legislative delegation of responsibility to the State's
highway agency (TxDOT) for policy decisions about state highways:


"We do not deem it necessary to state the provisions of the Highway Statutes. They
do, of course, create an agency in which are vested powers to formulate and execute
plans and policies for the location, construction and maintenance of a comprehensive
system of State highways and public roads."



Robbins v. Limestone Cnty., 268 S.W. 915, 917 (Tex. 1925) (emphasis added). Thus, TxDOT's
design decisions about state highway cross slopes involve performance of its legislatively delegated
function and subjecting such decisions to judicial scrutiny has separation-of-powers implications.
Cf. Tex. Gov't Code Ann. § 311.034 (West Supp. 2011) (recognizing "[L]egislature's interest
in managing state fiscal matters through the appropriations process"); Wichita Falls State Hosp.
v. Taylor, 106 S.W.3d 692, 695-96 (Tex. 2003) (noting that Legislature, rather than judiciary, is
better suited to balance conflicting policy issues associated with waiving immunity).